KISH, ADMX., APPELLANT, *v.* CENTRAL NATIONAL INSURANCE GROUP OF OMAHA ET AL., APPELLEES.

[Cite as Kish v. Central Nat. Ins. Group (1981), 67 Ohio St. 2d 41.]

(No. 80-1097—Decided July 1, 1981.)

*Mr. Ned L. Mann,* for appellant.

*Messrs. Calfee, Halter & Griswold, Mr. David J. Demars* and *Mr. William T. Smith,* for appellee Central National Insurance Group of Omaha.

*Messrs. Arter & Hadden* and *Mr. Ed E. Duncan,* for appellee Nationwide Mutual Insurance Company.

SWEENEY, J. Appellant's propositions of law present three issues for decision. The first question concerns the scope of uninsured motorists coverage. Specifically, we must determine whether the scope of an insurer's liability under the uninsured motorist provisions differs from the scope of liability under provisions that indemnify an insured for damages arising from the insured's own tortious conduct. The second question, which relates to whether a particular occurrence is to be considered an accident, is whether the accidentalness of a particular injury causing occurrence for purposes of recovery under policies of insurance is to be determined from the perspective of the injured insured, or from the perspective of the tortfeasor who caused the injury. The final question is one of contract construction. Upon finding that the occurrence giving rise to the claim is an accident, it must then be determined whether that accident is covered by the terms of the insurance contracts at issue.

## I.

Appellant contends that uninsured motorist insurance provides an insured with additional coverage that protects against a wide range of tortiously inflicted injuries, including intentionally inflicted vehicular-related injuries. In her first proposition of law, which states that "[t]he liability of an insurer which arises out of contract is entirely different from that which arises out of an indemnity contract," appellant seeks to distinguish the scope of an insurer's liability under uninsured motorist provisions from the scope of liability under indemnity agreements. She relies on *Motorists Mutl. Ins. Co.* v. *Tomanski* (1971), 27 Ohio St. 2d 222, to support the distinctions between the two types of coverage. The precise question in *Tomanski* was "whether the concurrent negligence of the operator of an insured third vehicle postpones, reduces, or eliminates the contractual rights which would otherwise

exist." *Id.* at 223. We held that the presence of the insured third vehicle had no effect on the insurer's obligations under the uninsured motorist provision of the policy. The rationale for the *Tomanski* holding was that " '[i]t is not the purpose of the uninsured motorist law to provide coverage for the uninsured vehicle, but its object is to afford the insured additional protection in the event of an accident.' " *Id.* at 224, quoting *Horne* v. *Superior Life Ins. Co.* (1962), 203 Va. 282, 123 S.E. 2d 401, 404. We stated further that " '[u]ninsured motorists' insurance is not liability insurance but resembles limited accident insurance. It insures him against losses occasioned by a limited group of tortfeasors.' " *Id.*, quoting *Hein* v. *Nationwide Mutl. Ins. Co.* (1965), 106 N.H. 378, 381, 213 A. 2d 197.

The *Tomanski* view that the purpose of uninsured motorist coverage is to provide additional protection comports with R. C. 3937.18, which requires the mandatory offering of uninsured motorist coverage. R. C. 3937.18(A) states that uninsured motorist coverage is designed "for the protection of persons insured***who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom." The statute focuses on a particular class tortfeasors—"owners and operators of uninsured vehicles;" it does not speak to the insurability of the tortious conduct that gives rise to the insured's claim. Thus *Tomanski* and R. C. 3937.18(A) appear to support the proposition that the scope of an insurer's liability under an uninsured motorist policy is broader than the scope of liability under a policy of indemnity. We could accept the aforestated proposition without further discussion were it not for apparently inconsistent language in some of our other cases that suggests that the scope of uninsured motorist protection is coextensive with the scope of liability insurance.

In *Abate* v. *Pioneer Mutl. Cas. Co.* (1970), 22 Ohio St. 2d 161, 165, we stated that "[u]ninsured motorist coverage***is designed to protect persons injured in automobile accidents from losses which, *because of the tort-feasor's lack of liability coverage,* would otherwise go uncompensated." (Emphasis added.) We took the same view and indeed used the same *Abate*

language in *Curran* v. *State Auto. Mutl. Ins. Co.* (1971), 25 Ohio St. 2d 33, 38. The phrase, "because of the tortfeasor's lack of liability coverage" was repeated in *Bartlett* v. *Nationwide Mutl. Ins. Co.* (1973), 33 Ohio St. 2d 50, 52, where we went on to say that "the legislative purpose in creating compulsory uninsured motorist coverage was to place the injured policy holder in the same position, with regard to the recovery of damages, that he would have been in if the tortfeasor had possessed liability insurance." The passage from *Bartlett* reappears in *Shearer* v. *Motorists Mutl. Ins. Co.* (1978), 53 Ohio St. 2d 1, 6-7.[3] See, also, *Grange Mutl. Cas. Co.* v. *Volkmann* (1978), 54 Ohio St. 2d 58.

Nevertheless, none of the cases cited in the above paragraph specifically considered whether the scope of uninsured motorist coverage is broad enough to permit recovery when an insured's injuries result from an uninsured motorist's intentional tort. There is only one reported Ohio case, *Celina Mutl. Ins. Co.* v. *Saylor* (1973), 35 Ohio Misc. 81, in which an insured made a claim against her insurer for injuries arising from an uninsured motorist's deliberate act. In *Saylor* the insured sustained injuries when she was intentionally struck by a vehicle driven by an uninsured motorist. The court adopted the additional protection view of uninsured motorist coverage and permitted recovery even though the act that caused the injury, a criminal assault, would not have been covered by liability insurance even if the tortfeasor had carried such insurance.[4]

The *Saylor* court's broad conceptualization of uninsured motorist coverage is consistent with previous statements of this court to the effect that the uninsured motorist statute is to be liberally construed. In *Curran, supra,* at page 38, we stated that "the uninsured motorist statute should be construed liberally in order to effectuate the purpose that coverage be

---

[3] Although in *Shearer* we quoted *Bartlett* approvingly, we also characterized uninsured motorist coverage at page 8, as "a policy provision which the insured considers to be additional protection and for which he pays a premium with such extra protection in mind***."

[4] If an insured intentionally inflicts an injury, "then as a matter of public policy, the contract of insurance would not afford coverage to such an act." *Murray* v. *Landerberger* (1966), 5 Ohio App. 2d 294, 298. See, also, 9 Couch on Insurance 2d 443, Section 39:15.

provided to persons injured through the acts of uninsured motorists." See, also, *Shearer, supra,* at 7.

We conclude that uninsured motorist coverage provides additional protection to an insured. The relevant inquiry under the provisions of an uninsured motorist policy is not whether the third-party tortfeasor could have made a successful claim against his own liability insurer if he had been insured. Instead, the question is to be framed in the language of the statute: whether the insured is "legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom." The insurability *vel non* of the tortfeasor's conduct is immaterial if the injuries caused by the tortfeasor otherwise fall within the statutory definition. Thus, we adopt the rationale of *Saylor* and hold that the claim of an insured under the uninsured motorist provisions of an insurance policy may not be denied solely on the basis that the injury sustained by the insured was intentionally inflicted by another.

## II.

The issue presented by appellant's second proposition of law is whether the accidentalness of a particular injury causing occurrence that gives rise to an insurance claim is to be determined from the perspective of the insured or from the perspective of the tortfeasor whose act caused the injury. Appellant contends that her husband's death was accidental. Appellees contend that it was not.

To support their position appellees rely heavily on *Commonwealth Cas. Co.* v. *Headers* (1928), 118 Ohio St. 429, and *Rothman* v. *Metropolitan Cas. Ins. Co.* (1938), 134 Ohio St. 241. In *Headers,* an insured sought to recover on his indemnity policy the expenses he had incurred in defending an assault and battery action that arose when one of the insured's employees allegedly assaulted one of the insured's customers. This court held, at pages 432-433, that the insurer was not obligated to pay the insured's legal expenses in the assault and battery case because by the terms of the policy the insurer was only required to defend actions arising out of the insured's negligence. The court went on to state that "an injury or death

does not occur by accident when it results from willful, intentional, personal violence inflicted by another."

In *Rothman* the issue was "whether there is a liability of the insurance company under the terms of its policy for damages in consequence of an accident resulting from wanton misconduct." *Id.,* at 243. The plaintiff in *Rothman* had recovered a judgment against the insured and then sought to collect the judgment from the insurer. The insurer denied liability on the grounds that the policy did not cover acts of wanton misconduct just as it would not have covered injuries intentionally inflicted. The court, however, found the insurer liable, stating that "[w]antonness does not include intent to injure." *Id.* at 245. The rule of *Rothman* is stated in paragraph two of the syllabus:

"The state of the will of the person by whose agency an injury is caused, rather than that of the injured person, determines whether an injury is accidental within the provisions of a policy indemnifying the insured against loss resulting from claims for accidental injuries caused by the operation of the insured's automobile."

*Rothman* provided the underpinning for Judge Whiteside's concurring opinion in *Randolf* v. *Grange Mutl. Cas. Co.* (1979), 57 Ohio St. 2d 25. The issue in *Randolf* was whether the liability provisions of the insured's homeowner's policy covered damages caused by the intentional acts of the insured's minor son. Judge Whiteside believed *Rothman* was dispositive on the question presented but noted, at page 30, that "[w]ere this an open question, a cogent argument could be made that under the policy, the nature of the occurrence should be determined from the parent's viewpoint, rather than that of his son." More importantly, the *Randolf* majority decided the case on the narrow ground that the express provisions of the insurance contract would not support recovery and made no reference to *Rothman* in its opinion. *Randolf,* therefore, should not be construed as breathing new life into *Rothman.*

*Headers, Rothman,* and *Randolf* all concerned insurance contracts of indemnity, the purpose of which was to indemnify the insured against liability arising from the insured's own (or his agent's or relative's) tortious conduct. Whether the particular occurrence upon which the claim was predicated in

these cases was an accident within the terms of the policies at issue was determined from the perspective of the insured. The syllabus in *Headers* and paragraph two of the syllabus in *Rothman* speak only to the perspective that governs the determination of whether an event is an accident for purposes of indemnity policies. We disaffirm *Headers* and *Rothman* to the extent that these cases contain language or have been construed to apply in contexts other than those in which recovery is sought under a liability policy designed to hold an insured harmless for the insured's own (or his agent's or relative's) tortious conduct. Absent any enforceable contractual provisions to the contrary, the perspective that governs the determination of whether an occurrence is an accident for uninsured motorist and accident insurance purposes is that of the insured.

This rule, which is applicable to both of the policies at issue herein was well-stated in *Nationwide Mutl. Ins. Co.* v. *Roberts* (1964), 261 N.C. 285, 134 S.E. 2d 654:

"When an insured is intentionally injured or killed by another, and the mishap is as to him unforeseen and not the result of his own misconduct, the general rule is that the injury or death is accidentally sustained within the meaning of the ordinary accident insurance policy and the insurer is liable therefor in the absence of a policy provision excluding such liability.* * *" *Id.* at 289.

A commentator has noted that "in regard to uninsured motorist coverage, it is particularly appropriate to examine the occurrence from the viewpoint of the injured party rather than from that of the aggressor. While the injury may be intentionally inflicted by the aggressor, to the extent that the assault is unprovoked and/or unexpected from the injured person's standpoint the damages are just as accidental as if he had been negligently struck."[5]

We adopt Judge Kraft's position in *Saylor, supra,* at pages 83-84, that "[t]he intent in the mind of the insured at the time of injury should determine whether the acts are accidental or intentional. To look through the eyes of the uninsured rather than the insured in this factual situation would

---

[5] Widiss, A Guide To Uninsured Motorist Coverage, Section 2.47, at page 95.

require an unconscionable twisting of the obvious purpose of purchasing insurance coverage."[6]

We conclude that the death of appellant's decedent was accidental because the uninsured motorist's murderous assault was "as to him, unforeseen and not the result of his own misconduct." Thus, for purposes of both insurance policies controverted herein, the preliminary requirement that the death or injury giving rise to the claim must be accidentally sustained is met.

### III.

Having determined that the scope of uninsured motorist coverage is broader than the scope of liability coverage and that the accidentalness of an occurrence is to be viewed from the perspective of the insured, we must now decide whether reasonable minds could conclude that appellant has made out a cognizable claim under the terms of the policies such that summary judgment would be inappropriate. The basic rule is that "the terms of the contract of insurance must be given due consideration, and that weight must be given to what was contemplated by the parties as to the coverage of the policy." *Orris* v. *Claudio* (1980), 63 Ohio St. 2d 140, 143. The operative language of the uninsured motorist provision of the Nation-wide policy states:

"Under this coverage, we will pay bodily injury damages that you or your legal representative are legally entitled to recover from the owner or driver of an uninsured motor vehicle. Damages must result *from an accident arising out of the ownership, maintenance, or use* of the uninsured vehicle. Bodily injury means bodily injury, sickness, disease, or death. [Emphasis supplied.]"

The family compensation provisions state in relevant part:

"Under this coverage, we will pay medical, confinement, and death benefits to or for you or any relative living in your household. We will pay these benefits for *accidental* bodily injury, sickness, disease, or death *suffered while occupying your auto*. Regardless of who is at fault in the accident, we will pay the following:

"* * *

---

[6] See *Id,* and, particularly (1980 Supp.), at page 170, Section 2.47 (*Saylor* cited as "illustrative of the judicial attitude which seems to usually prevail in such cases").

"Death Benefit. We will pay a death benefit of $5,000 for any insured who has reached his 18th birthday at the time of accident,***. Death must occur***as a *direct result of the accident.* [Emphasis supplied.]"

The Central policy compensates an insured for injuries resulting from the following enumerated accidents:

"Automobile, commercial motor vehicle, bus, school bus, taxicab, recreational vehicle, bicycle, farm tractor and pedestrian accidents.

"If such injury shall be sustained*** *by the wrecking of an automobile, commercial motor vehicle, bus, school bus, taxicab or recreational vehicle which the Member is driving or riding in; or*** *by the Member, as a pedestrian, being struck by a motor vehicle,* licensed to operate on streets and highways,***." (Emphasis added.)

In essence, appellant contends that the death of her husband was occasioned: (1) by "an accident arising out of ownership, maintenance, or use of the uninsured vehicle" for purposes of recovery under the uninsured motorist provisions of the Nationwide policy; (2) "as a direct result of the accident" which was "suffered while occupying***[the insured's] auto" for purposes of recovery under the family compensation provisions of the Nationwide policy auto; and, (3) "by the wrecking of an automobile***" for purposes of recovery under the Central policy. She postulates a chain of events theory of causality to the effect that "it was the rear end collision—and only that collision—that triggered and set into motion the series of events *but for which* Mr. Kish would be alive today."

A "but for" analysis is inappropriate to determine whether recovery should be allowed under uninsured motorist provisions of the Nationwide policy and the Central policy. The relevant inquiry is whether the chain of events resulting in the accident was unbroken by the intervention of any event unrelated to the use of the vehicle. The application of this standard to the instant facts leads us to conclude that the intentional, criminal act of the murderer was an intervening cause of injury unrelated to the use of the vehicle. As the court below stated, "the death resulted from an act wholly disassociated from and independent of the use of the vehicle as such."

The cases upon which appellant relies, *Saylor, supra, Roberts, supra, Leatherby Ins. Co.* v. *Willoughby* (Fla. App. 1975), 315 So. 2d 553, and *Davis* v. *State Farm Mutl. Auto Ins. Co.* (1973), 264 Ore. 547, 507 P. 2d 9, which support the proposition that the accidentalness of an event is to be viewed from the perspective of the insured, are inapposite to the question whether the injuries sustained by appellant's decedent entitle her to recover from the appellees under the terms of the policies at issue herein. The above cited cases all consider intentional acts directed at insureds in which the injury causing instrumentality is the vehicle itself. Appellee Central implicitly acknowledges that under the terms of its policy appellant's decedent's death would have been caused by a motor vehicle if the murderer had used his vehicle instead of a shotgun to kill Kish. Nationwide, too, recognizes that the factual situation presented in *Saylor, supra,* in which the automobile was the injury causing instrumentality, would constitute a "use" of the uninsured vehicle under the terms of its policy.

Regarding the family compensation provisions[7] of the Nationwide policy, the Court of Appeals found that "the decedent was entering and thus occupying the motor vehicle when shot." While we are in agreement with the Court of Appeals that the word "occupying" should not be given an unduly narrow definition, see *Robson* v. *Lightning Rod Mutl. Ins. Co.* (1978), 59 Ohio App. 2d 261, we cannot accept the finding that the decedent was occupying his vehicle within the terms of the policy when he was murdered. The stipulated fact that "[h]e [the decedent] tried to get back to his car," in itself does not support the conclusion of the court below that the decedent was "occupying" his vehicle.

"Occupying" has been liberally construed in several lower court cases to permit recovery for injuries sustained while the insured was performing tasks related to the operation of the vehicle. See *Robson, supra,* (loading the trunk of an automobile); *Madden* v. *Farm Bureau Mutl. Auto Ins. Co.*

---

[7] Appellant's motion to strike the portions of appellee Nationwide's brief that discuss the family compensation provisions is not well taken. An appellee need not file a cross-appeal to dispute the grounds of a lower court decision when he does not seek in anyway to modify the judgment of the court below. See *C. E. Morris Co.* v. *Foley Construction Co.* (1978), 54 Ohio St. 2d 279, 280, at fn. 1.

(1948), 82 Ohio App. 111 (changing a tire). In the case at bar, however, the decedent was not performing a task instrinsically related to the operation of the vehicle when he unsuccessfully sought to save his life by returning to his automobile. Thus, even a liberal construction of "occupying" cannot bring the instant facts within the ambit of the term.

Cases like the one at bar in which a fender-bender occasions an assault causing injuries that subsequently form the basis of an insurance claim, although rare, are not unknown. For example, in *Mangum* v. *Weigel* (La. App. 1981), 393 So. 2d 871, the court was confronted with a fact pattern similar to the set of facts presented herein. The plaintiff in *Mangum* was involved in a minor traffic collision whereupon the driver of the other vehicle, who was uninsured or under insured, got out of his car and approached the plaintiff's car. When the other driver reached the plaintiff's vehicle, he began to punch the plaintiff through the open window, and attempted to pull the plaintiff from the vehicle. The plaintiff suffered serious injuries as a result of the assault. He filed claims against his insurer under the uninsured motorist and medical payments provisions of his policy.[8] When the insurer denied his claims, the plaintiff sued. The court held that the injuries sustained by the plaintiff were not covered by the terms of the policy, notwithstanding the fact that the traffic collision precipitated the assault.

The terms of the Nationwide and Central policies are unambiguous. The clear language of the policies provides an insured with protection from a limited class of accidentally sustained injuries. Reasonable minds cannot but conclude that the injuries sustained by plaintiff's decedent, although accidental as to him, did not arise "out of the ownership, maintenance, or use of the uninsured vehicle," or "while occupying * * * [the insured's] auto," or by "the wrecking of an automobile" as required by the respective policy provisions. Appellant has not made out a cognizable claim under the terms of the policies, and therefore, the Court of Appeals did not err in affirming summary judgment for the appellees.

---

[8] Resolution of issues relating to the medical payments provisions at issue in *Mangum* did not turn on the same "while occupying" language that appears in the Nationwide family compensation provisions.

The judgments of the Court of Appeals are affirmed.

*Judgments affirmed.*

CELEBREZZE, C. J., W. BROWN, P. BROWN and HOLMES, JJ., concur.

MOYER, J., concurs in the judgment, but dissents from paragraphs one and two of the syllabus and the opinion in part.

C. BROWN, J., dissents.

MOYER, J., of the Tenth Appellate District, sitting for LOCHER, J.

MOYER, J., concurring in judgment; dissenting from first and second paragraphs of syllabus and that part of the opinion in relation thereto. While I concur in the judgment of the majority, I dissent from the first and second paragraphs of the syllabus and that portion of the opinion relating thereto, because I believe this court's interpretation of R. C. 3937.18(A) in *Abate* v. *Pioneer Mut. Cas. Co.* (1970), 22 Ohio St. 2d 161, and *Bartlett* v. *Nationwide Mut. Ins. Co.* (1973), 33 Ohio St. 2d 50, is the better-reasoned view of the law and permits the exclusion by an insurance policy of coverage of an insured motorist where his injuries are a result of intentional acts of an uninsured motorist. Even liberally interpreted, the uninsured motorists law was not adopted to give to an insured motorist new rights of recovery that he did not have prior to the adoption of said law. The first paragraph of the syllabus, which is the law of the case, gives an insured such a right and thereby, in my opinion, gives to R. C. 3937.18 a scope which was neither intended nor adopted by the General Assembly.

With respect to the second issue, I would likewise not disaffirm previous well-reasoned decisions of this court to effect a broad policy change in the law of Ohio. There is simply no reason other than to give a special benefit to an insured motorist who is injured by an uninsured motorist for "viewing the occurrence" through the eyes of the insured rather than the person causing the injury. The rationale of *Commonwealth Cas. Co.* v. *Headers* (1928), 118 Ohio St. 429, and *Rothman* v. *Metropolitan Cas. Ins. Co.* (1938), 134 Ohio St. 241, while applied specifically in those cases to indemnity policies, is equally

applicable to a case involving uninsured motorist coverage. Indeed, in determining whether an injury is a result of negligence or an intentional act in other areas of the law, we consistently look at the actions of the person accused of the act rather than the person seeking a remedy for the act. This court recognized that fact in *Headers, supra,* at pages 432-433, when it stated:

"***[T]hat is to say, an injury or death does not occur by accident when it results from willful, intentional, personal violence inflicted by another. The situation is not strengthened any in behalf of the defendant in error by reasoning that anything is an accident that is out of the ordinary and unexpected. There is no doubt that this assault and battery was wholly unexpected and was quite out of the ordinary, but that does not constitute it an accident. The trouble with that position is that the character of the act is distinctly and positively settled by the evidence in the case.***"

In that passage, this court recognized that whether an act is intentional or accidental does not depend upon the person against whom the act is directed but, rather, by an analysis of the character of the act itself. To say that Kish's unfortunate death was an accident is to close one's eyes to the facts in this case.

CLIFFORD F. BROWN, J., dissenting. It is my view that the judgments of the Court of Appeals should be reversed and the summary judgment in favor of both defendants be ordered vacated.

While concurring completely with parts one and two of the majority opinion, I find the conclusion which follows both inappropriate and unjust. Clearly, uninsured motorists coverage cannot be denied solely because the insured's injury or death was intentionally inflicted by the uninsured motorist. It is equally apparent that the perspective which governs determination of whether an occurrence is an accident for purposes of uninsured motorist protection is that of the insured. With that springboard and well reasoned predicate, taken from the majority opinion, one would expect that as night follows day, a final judgment should be entered for plaintiff. A surprise ending precludes that result.

This court finds provisions in the insurance contracts of both Nationwide and Central which preclude plaintiff from obtaining benefits under either insurance contract. I find those same provisions, construed liberally in favor of the insured as elementary principles of insurance law require, entitle plaintiff to recover on both policies.

Applying the language of the Nationwide insurance contract, the insured's death resulted from "an accident arising out of the ownership, maintenance, or use of the uninsured vehicle," *i.e.*, the rear end collision caused by the uninsured motorist which precipitated the shooting and killing of Kish. Under the family compensation provision, the claim of plaintiff was for "accidental***death suffered while occupying your auto," and under the "death benefit" provision, the claim fell within the provision "[d]eath***must occur as a result of the accident." Under any or all of these provisions, the death of the insured was covered by Nationwide. This conclusion would logically follow in light of the determination in the majority opinion that the shooting and death of Kish was accidental, and that the claim is not barred solely because the death was intentionally caused by the uninsured motorists.

Plaintiff is entitled to benefits under the Central group accident life insurance policy if decedent was killed either as a driver of his automobile or if he was a pedestrian (outside his vehicle) at the time of the shooting which killed him, because in either alternative the death occurred as a result of "the wrecking of the automobile," as the policy provides. Any other conclusion constitutes strict construction of the insurance policy in favor of the insurer, a construction which offends elementary principles of insurance contract law.