This is an accelerated appeal from the judgment of the Lucas County Court of Common Pleas granting the motion for summary judgment filed by appellee, Nationwide Mutual Insurance Company ("Nationwide"), and denying the motion for summary judgment filed by appellants, Dawn and Michael Scott. For the reasons that follow, we affirm the decision of the trial court.
Appellants timely appealed the trial court decision and raise the following assignments of error:
"FIRST ASSIGNMENT OF ERROR
 "The lower court erred in granting Appellee's Motion for Summary Judgment and by overruling Appellant's Motion for Summary Judgment because Appellant Scott's injuries were causally connected to the use of the minivan.
"SECOND ASSIGNMENT OF ERROR
 "The lower court erred in granting Appellee's Motion for Summary Judgment and by overruling Appellant's Motion for Summary Judgment because the minivan was an instrumentality of Dawn's [sic] Scott's injuries.
"THIRD ASSIGNMENT OF ERROR
 "The lower court erred in Granting Appellee's Motion for Summary Judgment and by overruling Appellant's Motion for Summary Judgment because the Assailant/tortfeasor was uninsured at the time of the incident."
Insofar as appellants' assignments of error are interrelated, we will consider them together.
The relevant facts are undisputed. On March 15, 1996, Dawn Scott was driving her minivan when it was struck from behind by a vehicle containing two persons. Irving Fort exited the vehicle and approached the minivan. When Fort got to the minivan, he struck Mrs. Scott on the head with the butt of a gun as she attempted to exit her vehicle. Fort pushed Mrs. Scott back into her minivan and drove her to a nearby location. Fort struck Mrs. Scott again, this time with a "Club," anti-theft device, and unsuccessfully attempted to open the side door. Fort then sexually assaulted Mrs. Scott. All the events occurred inside the minivan. At the time of this assault, Mrs. Scott was insured by Nationwide, which included uninsured/underinsured ("UM") motorist coverage.
On February 27, 1998, Mrs. Scott and her husband filed a complaint for declaratory judgment against Nationwide. Appellants asserted that their injuries arose as a result of "an accident arising out of the ownership, maintenance; or use of an uninsured motor vehicle." As such, appellants sought recovery pursuant to their UM coverage for the damages sustained as a result of the assault, including medical expenses, pain, suffering, emotional distress, loss of consortium, and breach of contract.
Nationwide responded in its answer, in part, that it did not owe coverage for appellants' injuries and damages because the injuries did not arise out of the ownership, maintenance or use of an uninsured motor vehicle and, therefore, the UM coverage was not applicable to their claims; the injuries were not caused by the owner or driver of an uninsured motor vehicle; the definition of an "uninsured motor vehicle" does not include an assailant who causes injury or damages without the use of an uninsured motor vehicle; and the injuries were not the result of "an accident," but rather were caused by the intentional act and intentional tort of a pedestrian assailant.
On January 28, 1999, appellants filed a motion for summary judgment. On March 5, 1999, Nationwide filed its cross-motion for summary judgment and opposition to appellants' motion for summary judgment. On May 19, 1999, the trial court denied appellants' motion and granted Nationwide's motion. The trial court found that, according to the policy, to be afforded coverage, Mrs. Scott's injuries must have arisen from the "ownership, maintenance, or use of the uninsured motor vehicle." However, the trial court found that UM coverage did not apply to appellants' injuries because the "ownership, maintenance, or use" of the motor vehicle was not the instrumentality that caused Mrs. Scott's injuries. Rather, the trial court found:
 "Here, the assault on Ms. Scott was an intervening cause of injury unrelated to the ownership, maintenance, or use of the uninsured motor vehicle. The instrumentality that caused Ms. Scott's injuries was the assailant himself, not the vehicle or the location of the incident."
This court notes that in reviewing a summary judgment, we must apply the same standard as the trial court. Lorain Natl.Bank v. Saratoga Apts. (1989), 61 Ohio App.3d 127, 129. Summary judgment will be granted when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the non-moving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Civ.R. 56(C).
Appellants argue on appeal that their injuries arose out of the "use" of the minivan by Fort and, therefore, are entitled to UM coverage:
 "In the present case, the assailant/ tortfeasor established control over the vehicle after striking Mrs. Scott on the head with the butt of a gun and driving her to another location where he parked the minivan before sexually assaulting Ms. Scott. The acts of driving and parking the vehicle show that the assailant had established the requisite amount of control over the vehicle to constitute use of the vehicle during the incident." (Emphasis in original.)
Appellants additionally argue that the "chain of events" that "led to Mrs. Scott's injuries was unbroken by any event which could lead one to believe that the assailant had given up control or use of the vehicle." Further, citing Lattanzi v. TravelersIns. Co. (1995), 72 Ohio St.3d 350, appellants argue that "the Supreme Court of Ohio envisioned that it is possible for a vehicle to be an injury causing instrumentality when the assailant and victim are both inside the vehicle." (Emphasis in original.) Because the assault on Mrs. Scott occurred inside the minivan, appellants argue that the minivan was the instrumentality that caused her injuries. Appellants further argue that the minivan was the instrumentality of Mrs. Scott's injuries because "[i]t is reasonable to believe that in such a scenario, [Mrs. Scott] was dazed, scared and injured and that these factors combined to form a panic situation that kept Mrs. Scott from being able to remove herself from the vehicle." In support of this argument, appellants rely on Grange Mut. Cas. Co. v. Darst (Sept. 11, 1998), Miami App. No. 97 CA 59, unreported.
Appellants' policy provided that UM coverage would be provided as follows:
 "We will pay compensatory damages, including derivative claims, which are due by law to you or a relative from the owner or driver of an uninsured motor vehicle because of bodily injury suffered by you or a relative. Damages must result from an accident arising out of the:
"1. ownership;
"2. maintenance; or
"3. use;
"of the uninsured motor vehicle."
According to Nationwide's policy, an "insured" means one who is described as entitled to protection under each coverage. For purposes of liability coverage, an insured includes appellants, a relative, and any person or organization that used appellants' vehicle with their permission. As such, when Fort took control of appellants' minivan without their permission, he was not insured by Nationwide.
Nevertheless, Nationwide asserts that appellants failed to establish that the minivan was "an uninsured motor vehicle" at the time of the incident. Specifically, Nationwide asserts that appellants failed to establish that Fort had no other liability insurance available to him. Pursuant to Nationwide's coverage, an uninsured motor vehicle is "one for which there is no bodily injury liability bond or insurance in effect * * * at the time of the accident." Accordingly, if Fort had insurance of his own that applied, there would be no UM coverage under Nationwide's policy.
We find that appellants did fail to establish that Fort was otherwise insured. However, to the extent that his actions were arguably intentional, it is unlikely that any liability coverage he had would even apply. Therefore, assuming arguendo
that Fort was an uninsured motorist, the remaining issue before us is whether appellants' injuries arose out of the ownership, maintenance, or use of the uninsured motor vehicle, as required by Nationwide's policy.
Kish v. Central Nat'l Ins. Group of Omaha (1981),67 Ohio St.2d 41, is the seminal case concerning this issue. In Kish, the decedent was stopped at a traffic light when his vehicle was struck from behind. When Kish exited his vehicle to confer with the other driver, the other driver got out of his vehicle with a shotgun. While attempting to get back into his vehicle, Kish was fatally shot. Kish's estate sought to recover under Kish's UM provision. The Ohio Supreme Court rejected the estate's "chain of events theory of causality," which stated that "`it was the rear end collision — and only that collision — that triggered and set into motion the series of events but for which Mr. Kish would be alive today.'" (Emphasis in original.) Kish at 50. The court held:
 "A `but for' analysis is inappropriate to determine whether recovery should be allowed under uninsured motorist provisions of the Nationwide policy and the Central policy. The relevant inquiry is whether the chain of events resulting in the accident was unbroken by the intervention of any event unrelated to the use of the vehicle. The application of this standard to the instant facts leads us to conclude that the intentional, criminal act of the murderer was an intervening cause of injury unrelated to the use of the vehicle. As the court below stated, `the death resulted from an act wholly disassociated from and independent of the use of the vehicle as such.'" (Emphasis added.) Id.
The court further found that the facts in Kish were different from cases where the "injury causing instrumentality is the vehicle itself." Id. at 51. As such, the court concluded that Kish's UM coverage did not apply.
The Ohio Supreme Court later applied its reasoning inKish to Howell v. Richardson (1989), 45 Ohio St.3d 365. InHowell, the occupants of two vehicles became embroiled in a heated verbal exchange that escalated into a chase. During the altercation, the Richardson vehicle was struck from behind by the Bayless vehicle. The Richardson vehicle eventually ended up blocking the Bayless vehicle in a parking lot. The Bayless vehicle subsequently accelerated toward the Richardson vehicle; however, shortly before impact, Richardson fired a gun directly at the windshield of the Bayless vehicle. The bullet lodged in the head of Bayless, resulting in serious injury.
Relying on Kish, the Ohio Supreme Court in Howell noted that the focus was not on the mental state of the tortfeasor, but on the instrumentality causing the death. Howell at 369. As such, the court held that "had the death in Kish resulted from the intentional ramming from behind of decedent's automobile by the tortfeasor's vehicle, recovery would have been allowed." Id., citing, Kish, supra at 51. Thus, under the facts in Howell, the court held that the directed verdict had been properly granted and that bodily injury to an insured resulting from the discharge of a firearm by a tortfeasor was not encompassed within the terms of a policy of insurance which limits coverage to injuries "caused by accident resulting from the ownership, maintenance or use" of an automobile. Howell at 369.
Lattanzi v. Travelers Ins. Co. (1995), 72 Ohio St.3d 350, was the most recent Ohio Supreme Court case concerning the issue of whether an injury arose out of the "ownership, maintenance or use of the uninsured motor vehicle." In Lattanzi, the victim was stopped at a traffic light when an uninsured motor vehicle struck her. The victim, however, suffered no bodily injuries in the collision. Following the collision, a man from the uninsured vehicle forced his way into the victim's car and, at gunpoint, took over operation of the vehicle. The assailant blindfolded the victim and took her to an unknown house where he then took the victim and raped her. The victim did not allege that she suffered any bodily injuries during her forced transportation to the house.
The Ohio Supreme Court overturned the decision of the appellate court which reasoned that the injuries arose out of the operation of the uninsured motor vehicle because it was the assailant's intent to kidnap the victim and that he intended to "effectuate his eventual assault by using her automobile as a manner of transport." Lattanzi at 351. Relying on Kish andHowell, the Ohio Supreme Court held that the state of mind of the tortfeasor is irrelevant; rather, "it is how he causes the injury that is important." Id. at 353. Again, the court reiterated the holding in Kish that "whether the act of the tortfeasor is negligent or intentional is not determinative of recovery, but that the key factor is the instrumentality used by the tortfeasor to cause the injury." Id. The court further held:
 "That the assailant intended to harm Mrs. Lattanzi and that he intended to use her automobile to take her to a place where he could harm her is not disputed, nor is it relevant. While the assailant may not have been able to achieve his nefarious purpose without the use of Mrs. Lattanzi's car, a `but for' analysis is inappropriate. Kish at 50 * * *. At the time the assailant removed Mrs. Lattanzi from her automobile, she had not yet suffered an injury. Any injury incurred by Mrs. Lattanzi after she and her abductor left the car was not achieved through use of the automobile as an instrumentality. Once leaving the automobile, the assailant's own brutal, criminal conduct became the only relevant instrument of injury." Id. at 353.
As such, the Ohio Supreme Court held that the Lattanzis' injuries were not covered under the UM provision of their policy, and stated, "* * * typically [UM motorist provisions] do not compensate for, or protect from, the evil that men do." Id.
Appellants argue that Fort never relinquished control of the minivan and, therefore, Mrs. Scott's injuries arose out of the use of the uninsured motor vehicle. Although Fort transported Mrs. Scott in the minivan to a location where the assault took place, that fact is not relevant and does not establish that her injuries arose out of the "use" of the uninsured motor vehicle. See Lattanzi, supra.
Appellants additionally argue that because Fort was inside the minivan when he assaulted Mrs. Scott, he was using the vehicle. However, as stated in Lattanzi, "the key factor is the instrumentality used by the tortfeasor to cause the injury." In this case, the instrumentality that caused Mrs. Scott's injuries was Fort, not the vehicle or the location of the incident. Typically, UM coverage does not "compensate for, or protect from, the evil that men do." Lattanzi at 353. Accordingly, we find that the "chain of events" resulting in Mrs. Scott's injuries was broken by the intervention of an event unrelated to the use of the vehicle. See Kish, supra.
Appellants rely on Darst, supra, in support of their arguments. However, in Darst, although the injuries occurred inside the uninsured motor vehicle, Darst is distinguishable because no intervening event unrelated to the use of the vehicle occurred. In Darst, twin two year old brothers were left unattended inside the vehicle, with matches. The vehicle caught fire, trapping the children within, and injuring one child and killing the other.
In this case, however, there was an intervening intentional criminal assault. An intentional criminal assault, with an instrumentality other than a motor vehicle, is considered an intervening cause of injury unrelated to the use of the vehicle. See Kish, supra at 50. Additionally, contrary to appellants' assertions, unlike Darst, there is no evidence that Mrs. Scott was unable to remove herself from the minivan. In fact, Mrs. Scott testified in her deposition that she knew Fort was improperly attempting to open the side door, but she chose not to assist his efforts.
There are cases that have found UM coverage to apply when a victim and assailant were inside the vehicle when the assault occurred. See, e.g., Bakos v. Insura Property andCasualty Ins. Co. (1997), 125 Ohio App.3d 548; and Buckeye UnionIns. Co. v. Carrell (1991), 77 Ohio App.3d 319. However, we find these cases to be unpersuasive. In Bakos, the driver of the vehicle was assaulted by the passenger and pushed from the vehicle and struck by another car. The court held that the matter should be remanded because "[r]easonable minds may differ as to what extent the injuries appellant received while driving the car, while being pushed out of the car, and while being in the roadway and struck by an oncoming car arose out of the operation, use or maintenance of the uninsured vehicle." Bakos at 555. We, however, find that Bakos is inapplicable due to the factual differences. In Carrell, the court found that the injuries were "causally related to the use of the vehicle" because the assault by the tortfeasors was in furtherance of the use of vehicle to effect a bank robbery. However, we find that Carrell
is inapplicable to the extent that Lattanzi supersedes the rationale in Carrell.
Accordingly, based on the foregoing, we find that appellants' injuries did not arise out of the "operation, maintenance, or use" of the minivan. Rather, appellants' injuries resulted from an act wholly disassociated from and independent of the use of the vehicle. As such, we find appellants' first, second, and third assignments of error not well-taken.
On consideration whereof, the court finds substantial justice has been done the party complaining and the judgment of the Lucas County Court of Common Pleas is affirmed. Appellants are ordered to pay the court costs of this appeal.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Melvin L. Resnick, J.
 Richard W. Knepper, J.
 Mark L. Pietrykowski, J.
CONCUR.