JOURNAL ENTRY AND OPINION
{¶ 1} The appellant, Nationwide Mutual Insurance Company, appeals the order of the Cuyahoga County Court of Common Pleas, Civil Division, which granted summary judgment in favor of the appellee, Sheri Renter, Administrator of the Estate of Jonzel Renter.[1] For the following reasons, we find the appellant's appeal to have merit and hereby vacate the order of the trial court and remand for further proceedings consistent with this opinion.
 {¶ 2} The instant matter stems from a motor vehicle accident which occurred April 21, 2000 on Interstate 90 in the City of Lakewood, Ohio. At the time of the accident, the decedent, Jonzel Renter Sr., was employed by Angelo Vlohas, owner of Ace Floorcare. The decedent was utilizing an Ace Floorcare vehicle when he stopped and exited his vehicle to assist a stranded motorist on Interstate 90. While assisting the stranded motorist, the decedent was struck and killed by a vehicle driven by Eric Anthony.
 {¶ 3} Sheri Renter, on behalf of her husband's estate, brought the instant action against the tortfeasor and several insurance companies seeking uninsured/underinsured motorist coverage because of the extent of the damages incurred.
 {¶ 4} During the course of litigation, Renter settled or dismissed claims against most of the defendant insurance companies, with the exception of Nationwide and Federal Insurance.[2] Both Nationwide and Renter filed motions for summary judgment on the issue of whether Renter is entitled to coverage under the Nationwide policy. The trial court entered judgment in favor of Renter holding that she was entitled to uninsured/underinsured coverage under the Nationwide policy.
 {¶ 5} It is from this grant of summary judgment that Nationwide now appeals, presenting one assignment of error for this court's review. Appellant's sole assignment of error states:
 {¶ 6} "I. The trial court erred in holding that the plaintiffs are entitled to uninsured/underinsured motorist coverage and medical payments coverage under the blanket protector business auto coverage issued to Angelo Vlahos d/b/a Ace Floorcare."
 {¶ 7} Civ.R. 56 provides that summary judgment may be granted only after the trial court determines: 1) no genuine issues as to any material fact remain to be litigated; 2) the moving party is entitled to judgment as a matter of law; and 3) it appears from the evidence that reasonable minds can come to but one conclusion and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party. Norris v.Ohio Std. Oil Co. (1982), 70 Ohio App.2d 1; Temple v. Wean United, Inc.
(1977), 50 Ohio St.2d 317.
 {¶ 8} It is well established that the party seeking summary judgment bears the burden of demonstrating that no issues of material fact exist for trial. Celotex Corp. v. Catrett (1987), 477 U.S. 317,330; Mitseff v. Wheeler (1988), 38 Ohio St.3d 112, 115. Doubts must be resolved in favor of the nonmoving party. Murphy v. Reynoldsburg (1992),65 Ohio St.3d 356.
 {¶ 9} In Dresher v. Burt (1996), 75 Ohio St.3d 280, the Ohio Supreme Court modified and/or clarified the summary judgment standard as applied in Wing v. Anchor Medina Ltd. of Texas (1991), 59 Ohio St.3d 108. Under Dresher, "* * * the moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact or material element of the nonmoving party's claim." Id. at 296. The nonmoving party has a reciprocal burden of specificity and cannot rest on mere allegations or denials in the pleadings. Id. at 293. The nonmoving party must set forth "specific facts" by the means listed in Civ.R. 56(C) showing a genuine issue for trial exists. Id.
 {¶ 10} This court reviews the lower court's granting of summary judgment de novo. Brown v. Scioto Bd. Of Commrs. (1993),87 Ohio App.3d 704. An appellate court reviewing the grant of summary judgment must follow the standards set forth in Civ.R. 56(C). "The reviewing court evaluates the record * * * in a light most favorable to the nonmoving party * * *. [T]he motion must be overruled if reasonable minds could find for the party opposing the motion." Saunders v. McFaul
(1990), 71 Ohio App.3d 46, 50; Link v. Leadworks Corp. (1992),79 Ohio App.3d 735, 741.
 {¶ 11} The business policy in question was issued by Nationwide to Angelo Vlahos, d/b/a Ace Floorcare, the decedent's employer. Under the Blanket Protection Business Auto Coverage Form-Declarations, the named insured is listed as follows:
 {¶ 12} "Angelo Vlahos
 {¶ 13} `DBA Ace Floorcare
 {¶ 14} `1336 Gladys
 {¶ 15} Lakewood, Ohio 44107"
 {¶ 16} Further, under the Ohio Uninsured Motorist Coverage — Bodily Injury endorsement, the named insured is listed as follows:
 {¶ 17} "Angelo Vlahos (individually)"
 {¶ 18} Under the Ohio Uninsured Motorist Coverage — Bodily Injury endorsement, the conditions of uninsured motorist coverage state:
 {¶ 19} "A. Coverage
 {¶ 20} "1. We will pay all sums the `insured' is legally entitled to recover as compensatory damages from the owner or operator:
 {¶ 21} "a. An `insured motor vehicle' as defined in paragraph F.3.d because of `bodily injury':
 {¶ 22} "(1) Sustained by the `Insured;' and
 {¶ 23} "(2) Caused by an `accident.'
 {¶ 24} "* * *
 {¶ 25} "B. Who is Insured
 {¶ 26} "1. You
 {¶ 27} "2. If you are an individual, and `family member.'
 {¶ 28} "3. Anyone else `occupying' a covered `auto' or a temporary substitute for a covered `auto.' The covered `auto' must be out of service because of breakdown, repair, servicing, loss or destruction.
 {¶ 29} "4. Anyone for damages he or she is entitled to recover because of `bodily injury' sustained by another `insured.'"
 {¶ 30} The appellant asserts two separate contentions in support of its position that coverage is not afforded to the appellee under said policy of insurance issued to the decedent's employer. First, the appellant contends that the policy of insurance is not ambiguous with respect to the identity of the "insureds" because the policy specifically states that the named insured is Angelo Vlahos, the decedent's employer. Second, the appellant contends that, even if the decedent is deemed to be covered under said policy, coverage is precluded due to the fact that the decedent was not "occupying" a covered auto as defined under said policy.
 {¶ 31} The appellant's first argument is premised on the Ohio Supreme Court ruling in Scott-Pontzer v. Liberty Mut. Fire Ins. Co.
(1999), 85 Ohio St.3d 660, in which the court was faced with the issue of whether "an employee * * * was an insured for purposes of underinsured motorist coverage" under a policy issued to the claimant's employer. The policy provisions regarding insureds at issue in Scott-Pontzer state:
 {¶ 32} "B. Who is an Insured
 {¶ 33} "1. You.
 {¶ 34} "2. If you are an individual, any family member."
 {¶ 35} The named insured in the declarations of the policy was a corporate entity, Superior Dairy. The court held that the policy language was ambiguous with respect to the identity of the "insureds" to whom the policy's uninsured/underinsured coverage was being provided. The court determined that the term "you" was ambiguous because a corporation cannot occupy an automobile or suffer bodily injury, and it would therefore be nonsensical to limit protection solely to the corporate entity. As such, the court held that the company's employees were "insureds" and entitled to uninsured/underinsured coverage.
 {¶ 36} Unlike the policy in Scott-Pontzer, the policy in question in the instant case was not issued to a corporate entity; rather, the policy was issued to "Angelo Vlahos, d/b/a Ace Floorcare," a sole proprietorship. Accordingly, as urged by the appellant, there does not exist any type of ambiguity as to the use of the pronoun "you." The policy's declarations page clearly names an individual, not a corporate entity, and this individual is capable of suffering bodily injury, a distinction clearly contemplated by the Supreme Court in Scott-Pontzer in reaching its decision.
 {¶ 37} Similar to the instant matter, the Third Appellate District addressed a factually similar situation in Reinbolt v. Gloor (2001),146 Ohio App.3d 661. In Reinbolt, Justin Reinbolt was injured while a passenger in a vehicle owned by a friend. At the time of the accident, Reinbolt was employed by Northwest Landscape Service, a sole proprietorship that was owned and operated by Ronald Foor. Westfield Insurance Company provided commercial insurance coverage to Northwest Landscape Service, including business, auto, uninsured/underinsured and umbrella coverage. The named "insured" under the policy was "Ronald Foor, d/b/a Northwest Landscape Service." Further, the "named insured" was defined in the common policy declarations as an "individual."
 {¶ 38} As in the instant matter, Reinbolt argued that pursuant toScott-Pontzer, he was insured under the policy of insurance issued by Westfield and entitled to the uninsured/underinsured coverage. He further argued that Scott-Pontzer stood for the proposition that uninsured/underinsured coverage was included in a commercial automobile policy which was issued to any type of employer that defined an "insured" as "you" or "if you are an individual, any family member."
 {¶ 39} In disagreeing with plaintiff's position, the Reinbolt
court concluded that the plaintiff was excluded from coverage. The court determined that a sole proprietorship had no legal identity separate from the individual who owned it, and an individual who did business as a sole proprietorship, under one of several names, remained one person.Reinbolt, supra at 667. Further, the court stated that Foor and Northwest Landscaping Service remain one person even though Foor did business using the name Northwest, a legal nonentity, having no separate legal identity. Id. Therefore, the plaintiff was not entitled to coverage pursuant to Scott-Pontzer since the policy was clear and unambiguous.
 {¶ 40} In accordance with Reinbolt, we cannot conclude that the policy of insurance issued by Nationwide to the decedent's employer, Angelo Vlahos, includes coverage pursuant to Scott-Pontzer. In following the reasoning of the Reinbolt court, supra, the applicability ofScott-Pontzer is limited to corporate entities where ambiguity arises in the context of an insurance policy. Unlike a corporation, a sole proprietorship and a sole proprietor remain the same individual. Further, a sole proprietorship, unlike a corporation, does not have a separate identity from the individual who owns it. Patterson v. M Auto Body
(1992), 63 Ohio St.3d 573, 574.
 {¶ 41} The intent of the parties in the instant matter was evident from the policy's clear and unambiguous language; therefore, we will not read into the insurance contract a meaning not contemplated or provided by the parties. Angelo Vlahos and Ace Floorcare have no separate legal identity and remain a single person, thus ambiguity does not arise when reading the definition of "who is insured" under the uninsured/underinsured coverage provision of the policy in question. The terms "you" and "your" clearly refer to the named insured in the declarations page, that being Angelo Vlahos, d/b/a Ace Floorcare. The ambiguity which existed in Scott-Pontzer is glaringly absent from the case at hand.
 {¶ 42} Next, the appellant secondarily contends that even if the decedent is deemed to be covered under said policy, coverage is nevertheless precluded due to the fact that the decedent was not "occupying" a covered auto as defined under said policy.
 {¶ 43} Under the Ohio Insured Motorist Coverage — Bodily Injury endorsement, the following provision states:
 {¶ 44} "B. Who is Insured
 {¶ 45} "1. You
 {¶ 46} "2. If you are an individual, and `family member.'
 {¶ 47} "3. Anyone else `occupying' a covered `auto' or a temporary substitute for a covered `auto.' * * *."
 {¶ 48} The insurance policy defines "occupying" as "in, getting in, on, out or off."
 {¶ 49} In reviewing the policy in question, it is evident that the decedent was driving a covered auto, that being his employer's vehicle, but when he exited the vehicle to assist the stranded motorist, he no longer was "occupying" said vehicle to afford coverage, as urged by the appellant. In order for this provision to apply, the decedent must be "occupying" a covered auto at the time of the accident. Under the facts of the instant matter, we cannot conclude that the decedent was "occupying" a covered auto at the time of the accident to invoke coverage.
 {¶ 50} Initially, it is understood that where language in an insurance contract is reasonably susceptible to more than one meaning, it should be liberally construed in favor of the insured and against the insurer. Buckeye Union Ins. Co. v. Price (1974), 39 Ohio St.2d 95. Additionally, the word "occupying" should not be given an unduly narrow definition, but, rather, should be given a liberal interpretation. Kishv. Cent. Natl. Ins. Group (1981), 67 Ohio St.2d 41. In construing uninsured motorist provisions of automobile insurance policies which provide coverage to persons "occupying" insured vehicles, the determination of whether a vehicle was occupied by the claimant at the time of the accident should take into account the immediate relationship the claimant had to the vehicle, within a reasonable geographic area.Joins v. Bonner (1986), 28 Ohio St.3d 398, 401, citing Robson v.Lightning Rod. Mut. Ins. Co. (1978), 59 Ohio App.2d 261.
 {¶ 51} In following Joins, a claimant must have an immediate relationship to the vehicle to be occupying the vehicle. The claimant'sperformance of a task related to the operation of an insured vehicle
provides a sufficient basis for his relationship to the vehicle. (Emphasis added.) Morris v. Continental Ins. Cos. (1991), 71 Ohio App.3d 581. Additionally, a sufficient relationship to the vehicle exists if the claimant's conduct is "foreseeably identifiable" with the normal use of the covered vehicle. Halterman v. Motorist Mut. Ins. Co. (1981),3 Ohio App.3d 1.
 {¶ 52} Last, this court has applied the "vehicle-oriented" test to determine if a sufficient relationship exists between the claimant and the covered vehicle. State Farm Mut. Auto Ins. Co. v. Cincinnati Ins.Co. (June 17, 1993), Cuyahoga App. No. 62930. The origin of the "vehicle-oriented" test is the New York case of Allstate Ins. Co. v.Flaumenbaum (1970), 62 Misc.2d 32, 308 N.Y.2d 447, wherein the New York court held that "a person has not ceased `occupying' a covered vehicle until he has severed his connection with it — i.e., when he is on his own without any reference to it." Id. at 46, 308 N.Y.2d 462.
 {¶ 53} In light of the above, it is apparent that the outcome of each case is highly fact sensitive. Further, there exists no bright line test to determine when a vehicle is said to be "occupied" in order to invoke coverage. Rather the courts randomly construed and interpreted the existing approaches or "tests" to determine "occupancy" on a case-by-case basis.
 {¶ 54} The instant policy defines "occupying" as "in, getting in, on, out or off." The testimony of Wimberly, the stranded motorist, reflected the following:
 {¶ 55} "And, you know, he took the gas can out of my hand and he put it back together for me and threw it in my car for me. Then I told him, `thank you,' again. I gave him a hug and we were saying good bye. I had to have been standing right by my car and he was like right in front of me and we were saying good bye and the vehicle hit him."
 {¶ 56} As such, when struck by the motorist, the decedent had not been getting "in" his car, "on" his car, "out" or "off" of his car; rather, he was standing in front of Wimberly's vehicle accepting her gratitude for assisting her.[3]
 {¶ 57} In giving the policy's definition of "occupying" a liberal, but plain and ordinary reading, there exists no ambiguity in determining that the decedent was not "occupying" a covered vehicle at the time of the accident to afford coverage. Simply, for coverage to be invoked, the decedent must have been "in" a covered auto, "getting in" a covered auto, "on" a covered auto, "getting out" of a covered auto, or "getting off" of a covered auto.
 {¶ 58} Under the facts of the instant matter, we cannot conclude that any of these situations occurred. Rather, the decedent was outside of his vehicle and assisting another motorist. The decedent had fully exited the vehicle in which he was traveling, as evidenced by his act of assisting Wimberly. Further, the decedent had not attempted to clearly return to his vehicle since he was still assisting Wimberly in preparing her vehicle to return to the roadway. Moreover, we note that the decedent was not performing any task associated with the use of the vehicle under which coverage is now sought.
 {¶ 59} This court is cognizant that scenarios exist associated with the operation of a covered vehicle which could arguably invoke coverage under the facts of the instant matter. For example, if the decedent was placing luggage into the trunk of his vehicle when struck by another motorist; if the decedent was placing road flares to notify oncoming motorists of his stranded vehicle when struck by another motorist; if the decedent was retrieving an object from the roadway which was specifically related to the operation of his vehicle when struck by another motorist; or if the decedent was struck while utilizing his
vehicle as a direct aid to another motorist, i.e., to jump start another vehicle or towing another vehicle. In each of the above examples, coverage could arguably be afforded because, although not actually being "in," "getting in," "on," "getting out," or "getting off" of a covered auto, the decedent would have been performing a task specifically related to the use of a covered vehicle.
 {¶ 60} However, the facts of the instant matter differ substantially from the above scenarios, as previously outlined. Specifically, the assistance performed for the stranded motorist was solely for the benefit of the stranded motorist. Moreover, the tasks performed by the decedent did not relate in any manner to the use of his employer's vehicle, the vehicle from which the decedent now seeks coverage. Accordingly, we decline to endorse the argument that the decedent was "occupying" his employer's vehicle at the time of the accident to invoke coverage.
 {¶ 61} Therefore, the order of the trial court granting summary judgment in favor of the appellee is hereby vacated, and this matter is remanded to the trial court.
JAMES D. SWEENEY, P.J., AND MICHAEL J. CORRIGAN, J., CONCUR.
[1] The decedent, Jonzel Renter, was an employee of Angelo Vlahos, d/b/a Ace Floorcare, the named insured under the Nationwide policy of insurance at issue in the instant appeal.
[2] The Nationwide policy of insurance is the only policy at issue in the instant appeal.
[3] This court is mindful of the fact that the decedent was acting as a good Samaritan when assisting the stranded motorist. However, we cannot invoke coverage into a policy of insurance when coverage is clearly precluded on this basis. Acting as a good Samaritan is a act of one's free will; an act in which compensation is of no regard. It would be unreasonable to conclude that one acting as a good Samaritan does so under the pretense that he/she will be compensated, because the act is premised in good will, not monetary compensation.