STENGER et al., Appellants,

v.

LAWSON et al., Appellees.

[Cite as *Stenger v. Lawson*, 146 Ohio App.3d 550, 2001-Ohio-4271.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 01AP–485.

Decided Dec. 4, 2001.

Lamkin, Van Eman, Trimble, Beals & Rourke and Michael J. Rourke, for appellants.

Gallagher, Gams, Pryor, Tallan & Littrell, L.L.P., Mark H. Gams and Dianne D. Einstein, for appellee State Farm Mutual Automobile Insurance Company.

---

DESHLER, Judge.

{¶ 1} This is an appeal by plaintiffs-appellants, Charles R. Stenger and Jean Stenger, from a judgment of the Franklin County Court of Common Pleas, granting partial summary judgment in favor of defendant-appellee, State Farm Mutual Automobile Insurance Company ("State Farm").

{¶ 2} On April 14, 2000, plaintiffs filed a complaint, naming as defendants Chuck A. Lawson, Melanie Ball, and State Farm. The complaint alleged the following facts. On April 16, 1999, plaintiff Charles R. Stenger ("Stenger") was stopped in a vehicle at the intersection of Sullivant Avenue and Countrybrook Drive West. At that time, defendant Lawson was the driver of a vehicle owned by defendant Ball, and Lawson's vehicle was stopped directly in front of Stenger's vehicle. After the light turned green, Lawson did not immediately proceed, so Stenger honked his car horn. Lawson exited his vehicle and approached Stenger. Stenger then exited his vehicle and Lawson tripped Stenger, causing him to fall onto his vehicle and sustain injuries. In the complaint, plaintiffs sought coverage against State Farm pursuant to Stenger's uninsured motorist coverage.

{¶ 3} On December 5, 2000, plaintiffs filed a motion for default judgment against defendants Lawson and Ball. By entry filed December 8, 2000, the trial court granted plaintiffs' motion for default judgment against defendants Lawson and Ball.

{¶ 4} On January 16, 2001, State Farm filed a motion for partial summary judgment as to all of plaintiffs' claims against State Farm. In its memorandum in support, State Farm argued that Stenger's uninsured motorist coverage limited recovery to situations where "bodily injury must be caused by an accident arising out of the operation, maintenance, or use of an uninsured motor vehicle." State Farm asserted that the chain of events leading to the assault on Stenger did not arise out of the use and operation of the automobile.

{¶ 5} On February 1, 2001, plaintiffs filed a memorandum contra State Farm's motion for summary judgment. In the memorandum, plaintiffs contended that Stenger's injuries were the result of "road rage," arising out of the use and operation of a motor vehicle. Attached to plaintiffs' memorandum was the affidavit of Stenger, who averred the following facts:

{¶ 6} "* * * As the light turned green, we both entered the intersection to make a left turn. The light then turned yellow, but the car in front of mine did not move. I then tooted my horn to get that driver to pay attention to the yellow light and make the turn.

{¶ 7} "* * * We both made a left turn on the yellow light. The driver ahead of me immediately began to repeatedly speed up and stop, causing me to stop several times.

[¶ 8] "* * * The driver ahead of me then stopped his car at the intersection of Sullivant Avenue and Countrybrook West Drive and exited his vehicle. I thought he was having car trouble, as his previous actions of speeding up and stopping seemed consistent with a stalling vehicle. I began to exit my truck to see if I could be of assistance.

[¶ 9] "* * * As I was almost all of the way out of my truck, the driver (Mr. Lawson) walked up to me, shoved me and tripped me, causing me to strike the door of my truck and then fall on the ground. * * *"

[¶ 10] On February 16, 2001, State Farm filed a reply to plaintiffs' memorandum contra State Farm's motion for summary judgment.

[¶ 11] On February 28, 2001, the trial court issued a decision granting State Farm's motion for partial summary judgment. In its decision, the trial court found that the undisputed facts indicated that Lawson physically assaulted Stenger outside the vehicle. Further, the trial court held that, although the chain of events leading up to Stenger's injuries may have begun within the parties' vehicles, the intentional assault broke the chain of events leading up to Stenger's injuries. Accordingly, the trial court held that the intentional assault by Lawson was the instrumentality causing Stenger's injuries rather than the use of the vehicle.

[¶ 12] On appeal, plaintiffs set forth the following six assignments of error for review:

[¶ 13] "I. The lower court committed reversible error in granting summary judgment in favor of defendant State Farm Mutual Automobile Insurance Company because defendant was not entitled to judgment as a matter of law and the case presented genuine issues of material fact which demand jury resolution.

[¶ 14] "II. The lower court committed reversible error in finding that Ohio uninsured motorist coverage does not apply to the injured victims of 'road rage' incidents.

[¶ 15] "III. The lower court committed reversible error by failing to consider the scientific evidence and testimony contained in a report of a 'road rage' hearing held before Congress and published by the United States Government;

and publications by the American Automobile Association, the National Highway Transportation Safety Administration, and the Ohio State Highway Patrol, all of which demonstrate that 'road rage' incidents arise from the operation or use of an automobile.

[¶ 16] "IV. The lower court committed reversible error in finding that an automobile must be the actual instrumentality causing the injury in order for an incident to 'arise from the use of an automobile.' * * *

[¶ 17] "V. The lower court committed reversible error in finding that the plaintiff was assaulted outside of his vehicle.

[¶ 18] "VI. The lower court committed reversible error in finding that 'road rage' incidents do not arise from the operation or use of an automobile as a matter of law."

[¶ 19] Plaintiffs' assignments of error are interrelated and will be considered together. The primary issue is whether the trial court erred in granting summary judgment in favor of State Farm based on the trial court's determination that Stenger's injuries did not arise out of the use of an uninsured vehicle.

[¶ 20] In *Mootispaw v. Eckstein* (1996), 76 Ohio St.3d 383, 385, 667 N.E.2d 1197, the Ohio Supreme Court noted the standard of review for summary judgment:

[¶ 21] "* * * Before summary judgment may be granted, it must be determined that (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. * * *"

[¶ 22] The relevant portion of the State Farm policy issued to Stenger states as follows:

[¶ 23] "We will pay damages for *bodily injury* an *insured* is legally entitled to collect from the owner or driver of an *uninsured motor vehicle*. The *bodily injury* must be caused by accident arising out of the operation, maintenance or use of an *uninsured motor vehicle*." (Emphasis added.)

[¶ 24] In granting summary judgment in favor of State Farm, the trial court relied upon three Ohio Supreme Court cases, *Kish v. Cent. Natl. Ins. Group* (1981), 67 Ohio St.2d 41, 21 O.O.3d 26, 424 N.E.2d 288; *Howell v. Richardson* (1989), 45 Ohio St.3d 365, 544 N.E.2d 878; and *Lattanzi v. Travelers Ins. Co.* (1995), 72 Ohio St.3d 350, 650 N.E.2d 430. Those cases involved claims made under uninsured motorist provisions limiting coverage to injuries caused by

accidents arising out of the "ownership, maintenance or use" of an automobile. In *Kish*, the driver of an insured vehicle, Kish, was stopped at a traffic signal when his vehicle was struck from behind by another vehicle. Kish got out of his car to confront the driver of the other vehicle, and the other driver emerged from his vehicle with a shotgun. When Kish observed that the driver had a weapon, he tried to get back to his car, but before he could do so the other driver fatally shot him.

[¶ 25] Appellant, the administrator of her husband's estate, made a claim against the insurance company under the uninsured motorist provisions of her policy. The trial court granted summary judgment in favor of the insurance company, and the trial court's judgment was affirmed on appeal. On further appeal to the Ohio Supreme Court, appellant argued that the death of her husband was occasioned by an accident arising out of the ownership, maintenance, or use of the uninsured vehicle for purposes of recovery under the uninsured motorist provisions of the policy.

[¶ 26] In *Kish*, the Ohio Supreme Court held that a "but for" analysis was inappropriate to determine whether recovery should be allowed under the uninsured motorist provisions. Id. at 50, 21 O.O.3d 26, 424 N.E.2d 288. Rather, "[t]he relevant inquiry is whether the chain of events resulting in the accident was unbroken by the intervention of any event unrelated to the use of the vehicle." Id. In applying that standard to the facts of the case, the court held that "the intentional, criminal act of the murderer was an intervening cause of injury unrelated to the use of the vehicle," thus agreeing with the lower court's finding that " 'the death [of Kish] resulted from an act wholly disassociated from and independent of the use of the vehicle as such.' " Id. The court in *Kish* further found the facts of that case distinguishable from other cases relied upon by the appellant in which "the injury causing instrumentality is the vehicle itself." Id. at 51, 21 O.O.3d 26, 424 N.E.2d 288.

[¶ 27] In *Howell*, supra, the occupants of two vehicles became embroiled in a heated verbal exchange, resulting in a chase. During the altercation, the owner of one vehicle fired a gun into the windshield of the other vehicle, and the bullet lodged in the head of one of the occupants. The Ohio Supreme Court, relying on *Kish*, reiterated that the key consideration was the instrumentality causing injury in holding that "bodily injury to an insured resulting from the discharge of a firearm by a tortfeasor is not encompassed within the terms of a policy of insurance which limits coverage to injuries 'caused by accident resulting from the ownership, maintenance or use of' an automobile." *Howell*, supra, at 369, 544 N.E.2d 878.

[¶ 28] In a subsequent Ohio Supreme Court case, *Lattanzi*, an uninsured motor vehicle struck Theresa Lattanzi's vehicle while Lattanzi was stopped at a

traffic light. Lattanzi did not suffer any injuries as a result of the collision. Following the collision, the man from the uninsured vehicle forced his way into Lattanzi's car at gunpoint, blindfolded Lattanzi, and took her to an unknown house, where he raped her. Lattanzi suffered bodily injury and psychological injury as a result of the rape, and she brought a claim for compensation under the uninsured motorist coverage portion of her policy.

[¶ 29] In *Lattanzi*, the court held that the insured was not covered under the uninsured motorist provisions of the policy which limited coverage to bodily injuries " 'caused by accident' and which 'arise out of the ownership, maintenance or use of the uninsured motor vehicle.' " Id. at 352, 650 N.E.2d 430. The court in *Lattanzi*, relying on its prior holdings in *Kish* and *Howell*, held that "[a]ny injury incurred by Mrs. Lattanzi after she and her abductor left the car was not achieved through use of the automobile as an instrumentality." *Lattanzi*, supra, at 353, 650 N.E.2d 430. Rather, "[o]nce leaving the automobile, the assailant's own brutal, criminal conduct became the only relevant instrument of injury." Id.

[¶ 30] In the present case, plaintiffs contend that they are entitled to recover under the uninsured provisions of the policy at issue because Stenger was the victim of "road rage." Specifically, plaintiffs argue that the driver of the uninsured vehicle became enraged while operating his vehicle, that he used the vehicle to stop Stenger, and that he continued his enraged operation of the vehicle by assaulting Stenger. Plaintiffs' argument relies upon a "but for" approach, i.e., but for the act of Stenger blowing on his horn, the other driver would not have become enraged, would not have attempted to stop Stenger's vehicle, and would not have exited his vehicle and assaulted Stenger. However, the holdings in *Kish, Howell,* and *Lattanzi* reject such a "but for" analysis, focusing instead on "the instrumentality causing the injury, whether or not this instrumentality was intrinsically related to the use of the vehicle, and whether the chain of events leading to the injury was broken by an intervening event unrelated to the use of the vehicle." *Feldkamp v. USAA Ins. Co.* (2000), 139 Ohio App.3d 118, 126, 743 N.E.2d 405.

[¶ 31] Here the conduct that inflicted harm on Stenger was the act of the other individual, Lawson, exiting his vehicle and tripping Stenger, i.e., the instrumentality that caused injury to Stenger was Lawson rather than an uninsured vehicle. Further, "[a]n intentional criminal assault, with an instrumentality other than a motor vehicle, is considered an intervening cause of injury unrelated to the use of the vehicle." *Scott v. Nationwide Mut. Ins. Co.* (Dec. 23, 1999), Lucas App. No. L–99–1191, 1999 WL 1267361. Thus, we find no error with the trial court's determination that, although the chain of events may have started when both drivers were inside their vehicles, the subsequent intervening, intentional conduct of Lawson in assaulting Stenger broke the chain of causation

such that the injuries were the result of Lawson's wrongdoing rather than from the use of an uninsured automobile. Accordingly, we conclude that the trial court did not err in concluding that the injuries to Stenger were not the result of an accident arising out of the operation, maintenance, or use of an uninsured automobile.

[¶ 32] Plaintiffs contend that the trial court erred in failing to consider "scientific evidence" in various publications as well as testimony contained in a report of a "road rage" hearing held before Congress. Plaintiffs argue that these publications, attached to plaintiffs' memorandum contra, demonstrate that "road rage" incidents arise from the operation or use of an automobile. We do not find, however, that these materials are dispositive of the law of this state on the issue presented, and we conclude that the trial court properly applied Ohio law as set forth in *Kish*, *Howell*, and *Lattanzi* in determining whether Stenger's injuries arose out of the operation, use, and maintenance of an uninsured motor vehicle.

[¶ 33] Plaintiffs further contend that two cases, *Bakos v. Insura Prop. & Cas. Ins. Co.* (1997), 125 Ohio App.3d 548, 709 N.E.2d 175, and *Buckeye Union Ins. Co. v. Carrell* (1991), 77 Ohio App.3d 319, 602 N.E.2d 305, are factually similar to the instant case and require reversal of the trial court's decision. Upon review, we find that the cases relied upon by plaintiffs are inapposite to the facts of this case. In *Bakos*, the insured driver was injured when his passenger, Bell, who was an uninsured motorist, pushed the driver out of his moving vehicle into the roadway where he was struck by an oncoming vehicle. Thus, under the facts of *Bakos*, the driver was "in the act of operating the vehicle when Bell began to strike him." *Bakos*, supra, at 555, 709 N.E.2d 175. Further, the passenger "took control and proceeded to push appellant out of the vehicle, forcing appellant onto the street, where he possibly sustained injuries caused by the motor vehicle itself." Id. Thus, the court in that case held that "[r]easonable minds may differ as to what extent the injuries appellant received while driving the car, while being pushed out of the car, and while being in the roadway and struck by an oncoming car arose out of the operation, use, or maintenance of the uninsured vehicle." Id. We conclude that the facts of *Bakos*, in which the passenger took control of the vehicle and the bodily injury to the insured was "causally related to the use of the uninsured motor vehicle," are distinguishable from the instant case. *Williams v. Grange Mut. Cas. Ins.* (June 9, 2000), Lucas App. No. L–99–1414, 2000 WL 731372.

[¶ 34] We also find the facts of *Buckeye Union*, supra, to be distinguishable. Under the facts of that case, Carrell, an employee of a used car dealership, was accompanying two individuals on a test drive when the two men physically overpowered him. Carrell suffered numerous injuries when the men forced him onto the floor of the back seat of the car and later dragged him from the car and

shoved him into the trunk. The assailants used the car to rob a bank, and Carrell was injured while escaping from the moving vehicle. In *Buckeye Union* at 323, 602 N.E.2d 305, the court held that "insofar as Carrell's injuries occurred while he was a passenger of the vehicle, they were causally related to the use of the vehicle." As in *Bakos*, supra, the assailant took control of the vehicle and the injuries were causally related to the use of the uninsured vehicle.

[¶ 35] Based upon the foregoing, we conclude that reasonable minds could reach only one conclusion and that conclusion is adverse to plaintiffs. Thus, the trial court did not err in granting summary judgment in favor of State Farm, and plaintiffs' assignments of error are not well taken and are overruled.

[¶ 36] Accordingly, plaintiffs' first, second, third, fourth, fifth, and sixth assignments of error are overruled, and the judgment of the Franklin County Common Pleas Court is hereby affirmed.

Judgment affirmed.

TYACK and BROWN, JJ., concur.