OPINION
{¶ 1} Asli Magan, administrator for the estate of Ali Sharif Ali, plaintiff-appellant, appeals the judgment of the Franklin County Court of Common Pleas granting the summary judgment motions filed by State Farm Fire Casualty Insurance Company ("State Farm") and Travelers Property Casualty Insurance Company ("Travelers"). Travelers has filed cross-assignments of error.
 {¶ 2} Due to the nature of the underlying crime involved, the circumstances surrounding the incident in question are not entirely clear, and each party's factual summary is different. At the beginning stages of the police investigation, Gregory Netter claimed he committed the crimes against Ali with an accomplice, Armond Dunlap, but State Farm and Travelers claim it was later discovered that Netter acted alone, although there is no specific proof of this in the record. The trial court's decision states that Netter and Dunlap acted together, as does appellant's brief. However, in appellant's responses to State Farm's request for admissions, appellant admitted that Netter carjacked Ali and shot him. Appellant's complaint also states that Netter directly caused the death of Ali. Regardless, whether Netter acted alone or with an accomplice is not material to the present issues. For purposes of appeal, we will assume, arguendo, that Netter acted alone, given his guilty plea to aggravated murder with a firearm specification and the lack of any evidence that Dunlap was ever charged.
 {¶ 3} On September 14, 1999, Ali was in the Capital Park Apartments parking lot operating a vehicle owned by a relative. Netter threatened Ali at gunpoint and then forced his way into Ali's vehicle. Netter then forced Ali to drive to a building some distance away with the intention to rob him. At some point after arriving at the location, Netter shot Ali. We note that Netter told the police that, after he exited the vehicle, Ali and Dunlap remained in the vehicle. Netter claimed Dunlap pointed the gun at Ali, Ali grabbed the gun, and Dunlap shot Ali. Regardless, Ali's body was disposed of behind the building. Netter was arrested on October 28, 1999, and ultimately pled guilty to aggravated murder with a firearm specification. The vehicle Ali had been operating was insured by State Farm. The State Farm policy included uninsured/underinsured ("UM/UIM") coverage. At the time of his death, Ali was employed by Ames Department Stores, Inc., a.k.a. Hill's Distribution Center ("Ames"). Ames had in effect at the time of the incident a commercial automobile policy, which included UM/UIM coverage, and an excess liability policy issued by Travelers.
 {¶ 4} On September 7, 2001, appellant filed an action seeking UM/UIM coverage under the State Farm and Travelers policies. Appellant filed a motion for summary judgment on July 30, 2002, and State Farm and Travelers filed motions for summary judgment on July 31, 2002. On August 23, 2002, appellant filed a voluntary dismissal of all claims except for those regarding the issue of UM coverage under the subject policies. On November 4, 2002, the trial court granted State Farm's and Travelers' motions for summary judgment, and judgment was filed November 26, 2002. Appellant appeals the judgment of the trial court, asserting the following assignment of error:
 {¶ 5} "The trial court erred by granting summary judgment in favor of Appellees and by overruling Appellant's Motion for Summary Judgment."
 {¶ 6} Appellant argues the trial court erred in granting summary judgment to State Farm and Travelers. Summary judgment will be granted where the movant demonstrates that there is no genuine issue of material fact, that the moving party is entitled to judgment as a matter of law, and where reasonable minds can only reach one conclusion, which is adverse to the non-moving party. Harless v. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64, 66. Once the moving party has satisfied its initial burden, the non-moving party has a reciprocal burden of setting forth specific facts showing there is a genuine issue for trial. Dresher v. Burt (1996), 75 Ohio St.3d 280, 293.
 {¶ 7} Appellant argues the trial court erred in finding that Ali was not covered under the State Farm and Travelers policies because his death did not result from the ownership, maintenance, or use of an uninsured motor vehicle.
 {¶ 8} The State Farm policy provides that it will pay damages for bodily injury an insured is legally entitled to collect from the owner or driver of an uninsured motor vehicle. The policy further provides that "[t]he bodily injury must be sustained by an insured and caused by accident arising out of the operation, maintenance or use of an uninsured motor vehicle." (Emphasis sic.) The Travelers policy provides that it will pay all sums the insured is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury sustained by the insured and caused by an accident. The policy further provides that "[t]he owner's or operator's liability for these damages must result from the ownership, maintenance or use of the `uninsured motor vehicle.'" Thus, the issue is whether Ali's death resulted or arose from the ownership, operation, maintenance, or use of the uninsured vehicle.
 {¶ 9} After thoroughly reviewing pertinent Ohio case law, the trial court concluded that the focus should be upon the instrumentality causing the injury and whether the chain of events leading to the injury was broken by an intervening event unrelated to the use of the vehicle. The court found that the instrumentality causing the death was the gun and not the uninsured vehicle. The trial court further determined that, although the uninsured motor vehicle may have been involved in the chain of events leading up to Ali's death, the intervening intentional criminal assault broke any chain of causation. The court found that Ali's death was the result of Netter's wrongdoing and not the use of an uninsured motor vehicle, and, thus, Ali was not entitled to uninsured motorist benefits under the policies of insurance issued by Travelers and State Farm.
 {¶ 10} There exists a multitude of cases dealing with the precise issue in the present case. However, the determination of each particular case is extremely fact driven, and each case has some slight factual variation that places it either within or outside the purview of the "ownership," "operation," "maintenance," or "use" of an uninsured vehicle. Thus, we must determine which cases have the most factually similar circumstances to the present case.
 {¶ 11} Appellant relies heavily upon our decision in Buckeye Union Ins. Co. v. Carrell (1991), 77 Ohio App.3d 319. In Buckeye Union, a man purporting to be a prospective customer asked to drive a used car at a car dealership. An employee accompanied the man on the test drive. During the test drive, the driver picked up another man, and the two men then physically overpowered the employee. The employee suffered numerous injuries as the men forced him onto the floor of the back seat and then dragged him from the car and shoved him into the trunk, hitting him repeatedly throughout. After the men used the car to rob a bank, the employee discovered that they intended to kill him, and the employee was injured while escaping from the moving vehicle. The employee sought UM/UIM coverage under the car dealership's policy. The trial court found the employee was entitled to judgment as a matter of law because his injuries were accidental from his point of view, and the injuries arose out of the use of the uninsured motor vehicle.
 {¶ 12} This court held that, insofar as the employee's injuries occurred while he was a passenger of the vehicle, they were "causally related" to the use of the vehicle. We found that the assaults by the driver and his accomplice were in furtherance of the use of the vehicle to effect the bank robbery. This court further held that the causal connection between the injuries and the use of the car was not severed simply because another passenger, with the driver's assistance and acquiescence, assaulted the employee.
 {¶ 13} Appellant also relies upon our case in Bakos v. Insura Prop. Cas. Ins. Co. (1997), 125 Ohio App.3d 548. In Bakos, a man entered a business and asked for someone to drive him to his vehicle, claiming it had become disabled. As the employee drove the man to his vehicle, the man jabbed the employee's head with what felt like a gun. The man then grabbed the employee by the neck and hair and pushed his head against the window. The man proceeded to push the employee as he sought to gain control of the automobile. Although it was unclear whether the car was stopped or still moving, the employee was forced out of the car and onto the street, where he was struck by an oncoming vehicle. He was thrown into a ditch and sustained serious injuries. The employee sought uninsured motorist coverage. The trial court found that the employee's injuries did not arise out of the operation, maintenance, or use of an uninsured motor vehicle.
 {¶ 14} On appeal, the Eighth District Court of Appeals reversed, finding there existed a question of fact as to whether the injuries arose from the operation, maintenance, or use of an uninsured motor vehicle. After examining pertinent case law, the court noted that the relevant determination was the relationship between the uninsured automobile and the injuries sustained by the insured. It indicated that the connection was insufficient where the injuries sustained by the insured were not caused by the uninsured motor vehicle. The court then found that, in its case, the employee was in the act of operating the vehicle when the man began to strike him in an attempt to take control of the vehicle. Further, the employee suffered injuries as a direct result of being thrown from the moving vehicle, at which point he was struck by another vehicle and possibly sustained injuries caused by his own vehicle. Given these facts, the court found there was a much more direct connection between the employee's operation of the vehicle and the injuries he sustained. The court concluded that reasonable minds may differ as to what extent the injuries the employee received while driving the car, while being pushed out of the car, and while being in the roadway and struck by an oncoming car arose out of the operation, use, or maintenance of the uninsured vehicle. The court held that a question of fact therefore remained as to whether and to what extent the employee's injuries were causally related to the uninsured vehicle.
 {¶ 15} The Ohio Supreme Court has addressed this issue several times. Most recently, the court addressed this issue in Lattanzi v. Travelers Ins. Co. (1995), 72 Ohio St.3d 350. In Lattanzi, an uninsured motor vehicle struck Theresa Lattanzi's car while she was stopped at a traffic light. Following the collision, a man from the uninsured vehicle forced his way into Lattanzi's car and, at gunpoint, took over operation of her vehicle. The assailant blindfolded Lattanzi and took her to an unknown house and raped her. Lattanzi sustained bodily injury and psychological injury as a result of the rape. She did not allege that she suffered any bodily injuries during her forced transportation to the house.
 {¶ 16} In determining whether Lattanzi's bodily injury arose out of the "ownership, maintenance, or use" of the uninsured motor vehicle, the Ohio Supreme Court cited several of its prior holdings. The court first cited its holding in Kish v. Central Nat. Ins. Group (1981),67 Ohio St.2d 41, in which the decedent was shot and killed attempting to get back into his car after he was struck from behind and exited his car to confer with the other driver, who emerged from his car with a shotgun. The court held in Kish that a "but for" analysis was inappropriate to determine whether recovery should be allowed under the UM/UIM provisions of the policy. Lattanzi, at 352, citing Kish, at 50. The court stated in Kish that the relevant inquiry was whether the chain of events resulting in the accident was unbroken by the intervention of any event unrelated to the use of the vehicle. Id. The court in Kish concluded that the intentional, criminal act of the murderer was an intervening cause of injury unrelated to the use of the vehicle. Id.
 {¶ 17} The court in Lattanzi also cited its holding in Howell v. Richardson (1989), 45 Ohio St.3d 365, in which the plaintiff was shot while riding in a vehicle that was fired upon by the driver of another vehicle. The court in Howell found that bodily injury to an insured resulting from the discharge of a firearm by a tortfeasor was not encompassed within the terms of a policy of insurance which limits coverage to injuries caused by an accident resulting from the ownership, maintenance or use of an automobile. Lattanzi, at 353, citing Howell, at 369. The court in Lattanzi explained that its decision in Howell reiterated the holding in Kish that whether the act of the tortfeasor is negligent or intentional is not determinative of recovery, but that the key factor is the instrumentality used by the tortfeasor to cause the death. Had the death in Kish resulted from the intentional ramming from behind of the decedent's automobile by the tortfeasor's vehicle, recovery would have been allowed. Id.
 {¶ 18} Relying upon Kish and Howell, the court in Lattanzi concluded that the state of mind and intent of the tortfeasor was irrelevant — it was how he caused the injury that was important. Id. The court found that the appellate court improperly focused upon the intentions of the tortfeasor in pointing out that he intended to commit harm upon Lattanzi, that it was obviously his intent to kidnap Lattanzi and to remove her from the public street to the abandoned house where the assaults took place, and that he intended to effectuate his eventual assault by using Lattanzi's automobile as a manner of transport. The court in Lattanzi held the fact that the assailant intended to harm Lattanzi and that he intended to use her automobile to take her to a place where he could harm her was not relevant. While the assailant may not have been able to achieve his nefarious purpose without the use of Lattanzi's car, a "but for" analysis was inappropriate. At the time the assailant removed Lattanzi from her automobile, she had not yet suffered an injury. Any injury incurred by Lattanzi after she and her abductor left the car was not achieved through use of the automobile as an instrumentality. Once leaving the automobile, the assailant's own brutal, criminal conduct became the only relevant instrument of injury. Id. at 353. The court in Lattanzi concluded that "[u]ninsured motorist provisions compensate for injuries caused by motor vehicles; they typically do not compensate for, or protect from, the evil that men do." Id.
 {¶ 19} In the present case, after reviewing the above-cited policies, we find Ali's death was not caused by an accident arising out of the operation, maintenance, or use of an uninsured motor vehicle. The chain of events resulting in Ali's death was broken by the intervention of an event unrelated to the use of the vehicle, namely, Netter's murder of Ali. As in Kish, the intentional, criminal act of Netter in murdering Ali was an intervening cause of injury unrelated to the use of the vehicle. Although Netter did "use" Ali's vehicle by hijacking it, and the chain of events included the "use" of Ali's vehicle, Ali's murder happened after the carjacking had taken place, and Netter's use of the vehicle was independent of his use of a handgun to murder Ali. As Lattanzi and Howell emphasize, the key factor is the instrumentality used by the tortfeasor to cause the death. See Lattanzi, at 353, citing Howell, at 369. The instrumentality used by Netter in the present case was a gun. Ali's death was not achieved through use of the automobile as an instrumentality. As the court held in Howell, the discharge of a firearm by a tortfeasor was not encompassed within the terms of the policy of insurance. See id. Likewise, in the present case, the discharge of a firearm by Netter was not encompassed within the policies and constituted a subsequent intervening, intentional act by Netter, thereby breaking the chain of causation. Ali's death was the result of Netter's wrongdoing rather than from the use of an uninsured automobile.
 {¶ 20} We find Buckeye Union and Bakos distinguishable. As to Buckeye Union, we first note that it was decided without the benefit of the Ohio Supreme Court's later decision in Lattanzi. Further, the use of the vehicle in Buckeye Union was much more intertwined with the injuries sustained than those in the present case, in that the employee suffered numerous injuries as the men forced him onto the floor of the back seat, dragged him from the car, and shoved him into the trunk, and after the employee jumped from the moving vehicle. Also in Buckeye Union, the car was actually the instrumentality that caused much of the injury. In the present case, Ali was not injured while being thrown inside the car or from the vehicle as it was being operated. Ali's death was solely inflicted by Netter's use of a gun.
 {¶ 21} Bakos is also distinguishable. Unlike in Bakos, the act of operating the vehicle in the present case did not contribute to Ali's injury. Ali was not pushed from his moving vehicle and could not have sustained injuries caused by his own motor vehicle. There was no direct connection between Ali's operation of the vehicle and the injuries he sustained. Unlike Bakos, in the present case, reasonable minds could not differ as to whether and to what extent Ali's injuries were causally related to his vehicle. In Bakos, there existed a question as to whether the injury occurred while the employee was driving the vehicle, while being pushed out of the car, or while in the roadway. In the present case, there is only one possible instrumentality that caused Ali's death, a gunshot wound. The vehicle played no role in Ali's death.
 {¶ 22} This court has before distinguished Buckeye Union and Bakos. In Stenger v. Lawson (2001), 146 Ohio App.3d 550, Charles Stenger was in his vehicle stopped at an intersection and Chuck Lawson's vehicle was stopped directly in front of Stenger's vehicle. After the light turned green, Lawson did not immediately proceed, so Stenger honked his horn. Lawson exited his vehicle and approached Stenger. Stenger then exited his vehicle and Lawson tripped Stenger, causing him to fall onto his vehicle and sustain injuries. This court, relying upon Lattanzi, Howell, and Kish, found the conduct that inflicted harm on Stenger was the act of the other individual, Lawson, exiting his vehicle and tripping Stenger, i.e., the instrumentality that caused injury to Stenger was Lawson rather than an uninsured vehicle. Id. at 555. Further, we found "`[a]n intentional criminal assault, with an instrumentality other than a motor vehicle, is considered an intervening cause of injury unrelated to the use of the vehicle.'" Id., quoting Scott v. Nationwide Mut. Ins. Co. (Dec. 23, 1999), Lucas App. No. L-99-1191. We distinguished both Buckeye Union and Bakos. With regard to Bakos, we concluded its facts were distinguishable, insofar as the driver in Bakos was in the act of operating the vehicle when the assault began, and the driver sustained further injury as a result of the tortfeasor attempting to gain control of the vehicle by pushing the driver out of the car. With regard to Buckeye Union, we found it distinguishable because the victim's injuries resulted from being shoved into the backseat and eventually jumping from the moving vehicle's trunk, and occurred while the tortfeasors were operating the vehicle. Unlike the present case, in Bakos and Buckeye Union, the tortfeasors injured the victims while they were operating the vehicle or attempting to gain control of the vehicle.
 {¶ 23} Although appellant compares Buckeye Union to the present case because the perpetrator in the present case also "intended" to steal Ali's car and commit crimes, the court in Lattanzi concluded that the state of mind and intent of the tortfeasor is irrelevant. Further, although appellant emphasizes that Netter was using the vehicle for his own criminal purpose, the court in Lattanzi held that the fact the tortfeasor intended to use the automobile to take Lattanzi to a place where he could commit a crime was not relevant. Despite the fact that Netter may have been in control of the vehicle and was using it to further his criminal activity, the automobile was not the instrumentality of death. Netter's gun was the instrumentality. Similarly, appellant's argument that without the use of Ali's vehicle, Netter could not have furthered his crime is inconsistent with the Ohio Supreme Court's finding in Lattanzi that, while the assailant may not have been able to achieve his nefarious purpose without the use of Lattanzi's car, a "but for" analysis is inappropriate. Therefore, the present circumstances are much more analogous to cases such as Howell and Kish, in which the intentional shooting of an individual was found to be an intervening cause independent of the use of an uninsured vehicle. See, also, Williams v. Grange Mut. Cas. Ins. (June 9, 2000), Lucas App. No. L-99-1414 (that the instrumentality, a shotgun, rather than the uninsured vehicle, caused the bodily injury to the decedent is the dispositive fact).
 {¶ 24} For the foregoing reasons, we find Ali's death did not result from the use, maintenance, or operation of an uninsured motor vehicle. Thus, appellant's assignment of error is overruled. Because we have overruled appellant's assignment of error, we need not address Travelers' cross-assignment of error.
 {¶ 25} Accordingly, appellant's assignment of error is overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
PETREE, P.J., and WATSON, J., concur.