{¶ 18} I respectfully dissent from the majority's decision to reverse the trial court's granting summary judgment for Motorists. The majority contends that the EMT's act of dropping the syringe could be viewed as arising out of the ownership, maintenance, or use of the ambulance and thus creates a genuine issue of material fact. In reaching this conclusion, the majority states that an "ambulance, by its very nature, is equipped with syringes for use by EMTs" and that "the presence of the syringe and the technician could be viewed as part and parcel of the ownership, maintenance or use of the ambulance."
 {¶ 19} I disagree with the majority's analysis because the EMT who dropped the syringe was neither the owner nor the operator of the ambulance. In addition, the evidence is undisputed that Nord's injury was not caused by a motor vehicle accident or the negligence of a motorist, but rather was caused by an independent act of medical negligence. The fact that the medical negligence occurred in an ambulance does not transform the incident into an automobile accident, especially since there is no evidence that the movement of the ambulance in any way contributed to the EMT's dropping the syringe.
 {¶ 20} It is undisputed that the ambulance was not involved in a motor vehicle accident. There is no evidence that the ambulance was forced off the road by another vehicle, or that the ambulance driver was negligent in any fashion. There is also no evidence that the ambulance driver swerved to avoid any hazard in the road. To the contrary, the undisputed evidence demonstrates that the ride was uneventful except for the EMT's dropping the syringe while rendering medical treatment to Paul Nord. This "accident" could have occurred anywhere including Nord's home or at the hospital.
 {¶ 21} The majority relies on Grange Mutual Cas. Co. v. Darst
(1998), 129 Ohio App.3d 723, to support its conclusion that the EMT's act of dropping the syringe arose out of the ownership, maintenance, or use of the ambulance. However, the Darst case is distinguishable in two significant respects: the injuries in Darst were caused by the operator's negligent control of the motor vehicle, and there was evidence that the vehicle itself was an instrumentality that proximately caused the underlying injuries.
 {¶ 22} In Darst, the court began its analysis by declaring that "in the context of automobile liability insurance, ownership, maintenance, or use merely correspond to the element of control necessary to demonstrate potential liability." Id. at 726. The court found that:
"It is beyond dispute that Kendra Darst (the mother) was in control ofthe vehicle when these injuries occurred. She had operated it, and parkedit intending to resume operating it again. She left her two young sonsinside, alone and unattended. Therefore, the necessary basis for herpotential liability is demonstrated." Id. at 727.
 {¶ 23} Here, there is no evidence that the EMT had control over the ambulance, a necessary basis for liability according to the Darst court. He was a passenger performing a medical function unrelated to the operation of the vehicle. Although the majority assumes that ambulances are equipped with syringes, the majority assumes facts not in evidence.[1]
There is no evidence in the record indicating where the EMT obtained the syringe. Moreover, because there is no evidence that the movement of the ambulance caused the syringe to fall on the patient, the actions of the EMT alone were the cause of Nord's injuries. Based on these facts, I would find the Nords were not entitled to UM benefits under the Motorists policy.
 {¶ 24} Moreover, I would follow the precedent established in the Eighth District, Arrowood v. Lemieux (Nov. 21, 2002), Cuyahoga App. 81312, in which this court stated:
"The Ohio Supreme Court has held that claims made under uninsuredmotorist provisions limit coverage to injuries caused by accidentsarising out of the ownership, maintenance or use of an automobile. Kishv. Central Nat. Ins. Group (1981), 67 Ohio St.2d 41; Howell v.Richardson (1989), 45 Ohio St.3d 365; Lattanzi v. Travelers Ins. Co.(1995), 72 Ohio St.3d 350. See, also, Stenger v. Lawson (2001),146 Ohio App.3d 550; Carter v. Burns (1993), 90 Ohio App.3d 787.
 The key consideration in such a case is the instrumentality causing theinjury. Id. Bodily injury to an insured resulting from the discharge of afirearm by a tortfeasor is not encompassed within the terms of a policyof insurance which limits coverage to injuries caused by accidentresulting from the ownership, maintenance or use of an automobile.Howell, supra at 369. Rather, the injury must be directly inflicted bythe uninsured vehicle. Carter, supra at 791.
 Here, the conduct that inflicted harm upon Arrowood was the act ofLemieux shooting her with his gun. Thus, the instrumentality that causedinjury to Arrowood was the gun rather than the uninsured vehicle.Uninsured motorist provisions compensate for injuries caused by motorvehicles; they typically do not compensate for, or protect from, the evilthat men do."
 {¶ 25} Similarly, in the instant case, the conduct that inflicted harm was the act of the EMT dropping a syringe. Thus, the instrumentality that caused the injury was the syringe rather than the vehicle. Because there was no negligence by the driver of the ambulance, I would affirm the trial court's granting summary judgment for Motorists.
[1] Under the majority's reasoning, if this had been a police car and an officer accidentally shot a suspect in the car, uninsured motorists coverage would apply because police cars are equipped with weapons.