[Cite as *Curry v. Estate of Akers*, 2016-Ohio-581.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Ryan J. Curry, | : | |
| Plaintiff-Appellant, | : | |
| | : | No. 15AP-836 |
| v. | : | (C.P.C. No. 14CV-4735) |
| The Estate of Boyd F. Akers et al., | : | (ACCELERATED CALENDAR) |
| Defendants-Appellees. | : | |

D E C I S I O N

Rendered on February 18, 2016

*Lazzaro Luka Law Offices, LLC, Lynn A. Lazzaro, Lori A. Luka,* and *Gillian A. Steiger,* for appellant.

*Gallagher, Gams, Pryor, Tallan & Littrell L.L.P.,* and *James R. Gallagher,* for appellee State Farm Fire and Casualty Company.

APPEAL from the Franklin County Court of Common Pleas

TYACK, J.

{¶ 1} Plaintiff-appellant, Ryan J. Curry, appeals from the judgment of the Franklin County Court of Common Pleas denying his motion for summary judgment on the issue of uninsured motorist coverage and granting defendant-appellee, State Farm Fire and Casualty Company's ("State Farm"), motion for summary judgment on the same issue. For the reasons that follow, we affirm the judgment of the trial court.

I. FACTUAL AND PROCEDURAL BACKGROUND

{¶ 2} Curry was injured when he accidentally struck and killed Boyd Akers on Interstate I-270 in Gahanna, Ohio around 9:30 p.m. on April 16, 2012. Curry was driving a 2006 Ford Fusion with the permission of and owned by his girlfriend, Tina Pignatelli. The vehicle was insured by State Farm and contained an uninsured motorist clause.

{¶ 3}   At the time of the accident, Boyd Akers and his two daughters, Amanda Akers and Kourtney Akers, were returning from shopping at Eastland Mall in a 1990 Buick Century purchased by Boyd but titled in the name of 19-year-old Amanda Akers. Boyd Akers had a suspended driver's license. It is not disputed that the Buick was uninsured.

{¶ 4}   Boyd Akers was driving the Buick with Amanda Akers' permission. Kourtney Akers was speaking to someone about activating a cell phone they had just purchased. Boyd Akers was upset with the cell phone company and began making comments.  Kourtney Akers put her hand over Boyd Akers mouth in an attempt to quiet him.  This upset Boyd Akers who pulled the car off the road and parked on the berm near the grass adjacent to the northbound lanes of I-270.  He then exited the vehicle, crossed all four northbound lanes of I-270 on foot, climbed over the median fence separating the north and southbound lanes, and crossed all four southbound lanes of the freeway.

{¶ 5}   Upon reaching the other side of I-270 he made or received a cell phone call with a friend that lasted approximately three minutes. Then he re-crossed all four southbound lanes, climbed the median fence, and was crossing the northbound lanes while cars were swerving around him.  Amanda and Kourtney Akers exited the Buick and began screaming at him not to cross the road.  Amanda Akers testified that Boyd Akers was more than halfway through the fourth northbound lane when he was struck by Ryan Curry's vehicle.  He had nearly reached the rear of the Buick when Ryan Curry struck and killed him. Both the Ohio Traffic Crash Report and Amanda Akers indicated that Boyd Akers was returning to his vehicle when he was struck and killed.

{¶ 6}   Ryan Curry testified he was traveling between 60 and 65 mph when he saw a car in front of him suddenly swerve.  He then saw Boyd Akers in the second northbound lane of I-270 and almost immediately struck him.  Akers' body was propelled through the air and into the driver's side windshield of Curry's vehicle. After striking Akers, Curry engaged heavy braking and came to a final stop under the Tech Center Drive bridge. Curry sustained bodily injury and was transported to Grant Medical Center. He also received psychiatric care after the accident.

{¶ 7}   State Farm denied coverage based on the uninsured motorist provisions of the policy issued to Tina Pignatelli. State Farm took the position that the injuries

sustained by Ryan Curry were not caused by an accident arising out of the operation, maintenance or use of a motor vehicle by an uninsured motorist. State Farm asserted that, because Boyd Akers was a pedestrian at the time of the accident, Akers himself was the instrument of the injury, not a motor vehicle.

{¶ 8} Curry filed suit on April 4, 2014 against the Estate of Boyd Akers, Amanda K. Akers, and State Farm.

{¶ 9} Curry and State Farm filed cross-motions for summary judgment. On April 27, 2015, the trial court found in favor of State Farm finding that "the cause of the bodily injury was a *person* and not a *motor vehicle* as required by the uninsured motorists provision." (Emphasis sic.) (April 27, 2015 Decision and Entry, 5.)

{¶ 10} After the trial court entered judgment for State Farm, Curry filed a motion for summary judgment against the Estate of Boyd Akers and Amanda Akers. They failed to respond to the motion. The trial court granted Curry's motion for summary judgment on August 5, 2015, finding Boyd Akers to be negligent and that Amanda Akers had negligently entrusted the vehicle to Akers. The trial court set the matter for a hearing on damages, but held it in abeyance pending a decision from this court on the issue of uninsured motorist coverage.

{¶ 11} Curry then appealed to this court on September 4, 2015.

## II. ASSIGNMENTS OF ERROR

{¶ 12} On appeal, Curry sets out the following two assignments of error:

> I. The Trial Court erred to the detriment of the Appellant/Plaintiff Ryan J. Curry when it granted summary judgment in favor of Appellee/Defendant State Farm Fire and Casualty company holding that there were no genuine issues of material fact as to whether or not Appellant/Plaintiff Ryan J. Curry's [sic] was entitled to uninsured motorist coverage under the policy of insurance issued by Appellee/Defendant State Farm Fire and Casualty Company to non-party Tina Pignatelli for injuries Appellant/Plaintiff Ryan J. Curry sustained in an automobile accident on April 16, 2012.
>
> II. The Trial Court erred to the detriment of the Appellant/Plaintiff Ryan J. Curry when it denied summary judgment to Appellant/Plaintiff Ryan J. Curry holding that Appellant/Plaintiff Ryan J. Curry was not entitled to uninsured motorist coverage under the policy of insurance

issued by Appellee/Defendant State Farm Fire and Casualty Company to non-party Tina Pignatelli for injuries Appellant/Plaintiff Ryan J. Curry sustained in an automobile accident on April 16, 2012.

{¶ 13} The assignments of error are related and will be addressed together.

## III. STANDARD OF REVIEW

{¶ 14} Our review of summary judgment on appeal is de novo. *Comer v. Risko*, 106 Ohio St.3d 185, 2005-Ohio-4559, ¶ 8. To obtain summary judgment, the movant must show that (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion when viewing evidence in favor of the nonmoving party and that conclusion is adverse to the nonmoving party. Civ.R. 56(C); *New Destiny Treatment Ctr., Inc. v. Wheeler*, 129 Ohio St.3d 39, 2011-Ohio-2266, ¶ 24.

{¶ 15} The movant bears the initial burden of informing the trial court of the basis for the motion and of identifying those portions of the record demonstrating the absence of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280 (1996). Once the moving party meets this initial burden, the nonmoving party has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmoving party does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party. *Id.*

{¶ 16} Summary judgment is appropriate when the evidence is construed most strongly in favor of the nonmoving party, and reasonable minds can reach only one conclusion, that being adverse to that party. Civ.R. 56(C).

{¶ 17} As explained by the Supreme Court of Ohio:

> The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some *evidence* of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific

> facts showing that there is a genuine issue for trial, and if the nonmoving party does not respond, summary judgment shall be rendered against the nonmoving party.

(Emphasis sic.) *Dresher* at 293.

## IV. ANALYSIS

{¶ 18} We begin our analysis by noting how Ohio courts view insurance contracts. "Ohio has traditionally given a liberal interpretation to insurance coverage. Ambiguities within a policy are always resolved in favor of the insured." *Nationwide Ins. Co. v. Auto-Owners Mut. Ins. Co.*, 37 Ohio App.3d 199, 201 (10th Dist.1987). "A contract of insurance prepared and phrased by the insurer is to be construed liberally in favor of the insured and strictly against the insurer, where the meaning of the language used in doubtful, uncertain or ambiguous." *Toms v. Hartford Fire Ins. Co.*, 146 Ohio St. 39 (1945).

{¶ 19} The State Farm policy provides that it will pay damages for bodily injury an insured is legally entitled to recover from an uninsured motorist. The policy further provides that "[t]he ***bodily injury*** must be: a. sustained by an ***insured***; and b. caused by an accident arising out of the operation, maintenance, or use of a ***motor vehicle*** by an ***uninsured motorist***." (Emphasis sic.)

{¶ 20} Specifically, the policy provides in pertinent part as follows:

> ***Uninsured Motorist*** means the owner or operator of:
>
> 1. a ***motor vehicle***, whose ownership, operation, maintenance, and use of that ***motor vehicle*** is:
>
> a. not insured or bonded for bodily injury liability at the time of the accident; * * *
>
> **Insuring Agreement**
>
> 1. ***We*** will pay compensatory damages for ***bodily injury*** an ***insured*** is legally entitled to recover from an ***uninsured motorist***. The ***bodily injury*** must be:
>
> a. sustained by an ***insured***; and
>
> b. caused by an accident arising out of the operation, maintenance, or use of a ***motor vehicle*** by an ***uninsured motorist.***

(Emphasis sic.) (R. 46; State Farm Insurance Policy, 13-14.)

{¶ 21} It is undisputed that Ryan Curry is an insured under the State Farm policy. It is also apparent from the definition of an uninsured motorist that both Boyd Akers and Amanda Akers were uninsured motorists under the same policy.

{¶ 22} State Farm denied coverage because it claimed: "The injuries sustained by Ryan Curry in the above loss were not caused by an accident arising out of the operation, maintenance or use of a motor vehicle by an uninsured motorist. Boyd Akers was a pedestrian at the time of loss and he himself was the instrument of injury, not a motor vehicle." (Plaintiff Ryan J. Curry's Motion for Summary Judgment, exhibit No. 6.)

{¶ 23} Therefore, the question at the summary judgment stage of litigation is whether Ryan Curry's injuries were caused by an accident arising out of the use of a motor vehicle because Boyd Akers was returning to the vehicle when he was struck and killed, thereby causing injury to Curry. Boyd Akers was arguably only one-half of a lane away from the vehicle when Curry struck him.

{¶ 24} The issue is not, as State Farm argues, whether the vehicle itself was the instrumentality that injured Curry. *Grange Mut. Cas. Co. v. Darst*, 129 Ohio App.3d 723 (2d Dist.1998). Rather, the issue is whether the accident arose out of Boyd Akers' use of the vehicle.

{¶ 25} For example, in *Grange*, children were left unattended in a car, found matches, and started a fire. The fire that resulted from the use of the matches by one of the children was causally connected to the owner's negligence in leaving her two young children alone and unattended in a car where matches were kept. The court held that the cause of injury was not disconnected from any negligence involved in the actor's operation, maintenance, or use of the motor vehicle.

{¶ 26} Similarly, in *Nationwide*, a case from this district, a hunter was ejecting shells from a shotgun which he intended to place in his truck when the gun accidentally discharged. A slug penetrated the bed of the truck and struck a passenger sitting in the cab. This court found the injury was connected with the use of the truck as a means of transporting the parties' hunting equipment.

{¶ 27} Curry argues that the instant case is most like *State Auto. Mut. Ins. Co. v. Rainsberg*, 86 Ohio App.3d 417 (8th Dist.1993).  In *Rainsberg*, the Cuyahoga County Court of Appeals found that the insured's injuries arose out of the use of the uninsured motor vehicle where the insured suffered injuries when he struck pedestrians who were attempting to divert traffic from a stalled, uninsured motor vehicle on the Ohio Turnpike. The court found that the insured's injuries arose out of the use of the uninsured motor vehicle because the chain of events preceding the accident exclusively concerned the pedestrians trying to obtain help for their stalled vehicle and to divert traffic away from their stalled vehicle. *Id.* at 422.  The court explained that its case was unlike cases in which the injury suffered by the insured stemmed from an act wholly disassociated from and independent of the use of the vehicle.  *Id.*

{¶ 28} The court noted that ownership, maintenance or use of the uninsured vehicle "has been judicially construed to require 'that a causal relation or connection must exist between the accident or injury and the "ownership, maintenance or use" of a vehicle in order for the accident or injury to come within the meaning of the clause "arising out of the ownership, maintenance or use" of a vehicle.' " *Id.* at 421, quoting 89 A.L.R.2d 150, 153. " 'Where such causal connection or relation is absent, coverage will be denied.' " *Id.* at 421, quoting 89 A.L.R.2d 150, 153.

{¶ 29} Also, the court stated:

> "A number of authorities in this area define the term 'arising out of to mean 'originating from' or 'growing out of' or 'flowing from.' " Annotation, *supra*, 89 A.L.R.2d at 61. The term has also been used to mean 'causally connected with, not proximately caused by.' *See Manufacturers Cas. Ins. Co. v. Goodville Mut. Cas. Co.* (1961), 403 Pa. 603, 607, 170 A.2d 571, 573. Therefore, the issue is not one of proximate cause. It is sufficient if the use is connected with the accident or the creation of a condition that caused the accident. The consensus is that the issue is not one of proximate cause but the requirement of some causal relation or connection. * * *
>
> "* * * [I]t is required that there be a factual connection growing out of or originating with the use of the vehicle." (Emphasis added.)

(Emphasis sic.) *Id.* at 421, quoting 89 A.L.R.2d 150, 153.

{¶ 30} State Farm argues the instant case is governed by *Kish v. Central Natl. Ins. Group*, 67 Ohio St.2d 41 (1981), and its progeny. *Kish* is the leading Supreme Court of Ohio case involving claims made under uninsured motorist provisions limiting coverage to injuries caused by accidents arising out of the "ownership, maintenance or use" of an automobile.

{¶ 31} In *Kish*, the driver of an insured vehicle, was stopped at a traffic signal when his vehicle was struck from behind by another vehicle. Kish got out of his car to confer with the driver of the other vehicle, and the other driver emerged from his vehicle with a shotgun. When Kish observed that the driver had a gun, he tried to get back to his car, but before he could do so the other driver fatally shot him.

{¶ 32} The Supreme Court of Ohio held that a "but for" analysis was inappropriate to determine whether recovery should be allowed under the uninsured motorist provisions. Rather, "the relevant inquiry is whether the chain of events resulting in the accident was unbroken by the intervention of any event unrelated to the use of the vehicle." *Kish* at 50. In applying that standard to the facts of the case, the court held that "the intentional, criminal act of the murderer was an intervening cause of injury unrelated to the use of the vehicle," thus agreeing with the lower court's finding that " 'the death [of Kish] resulted from an act wholly disassociated from and independent of the use of the vehicle as such.' " *Id.*

{¶ 33} The court in *Kish* further found the facts of that case distinguishable from other cases in which "the injury causing instrumentality is the vehicle itself." *Id.* at 51. The court determined that if the murderer had used his vehicle instead of a shotgun to kill Kish, under the terms of the policy the automobile would have been the instrumentality causing the injury and therefore would constitute "use" of the uninsured vehicle. *Id.*

{¶ 34} *Stenger v. Lawson*, 146 Ohio App.3d 550 (10th Dist.2001), is a case from this district in which the court applied the analysis in *Kish* to a situation involving road rage.

{¶ 35} *Stenger* involved a driver who honked his horn at another driver who failed to proceed after a light turned green. The other driver got out of his vehicle to confront the insured and tripped the insured, causing him to fall and sustain injuries. The uninsured motorist policy stated that, "[w]e will pay damages for *bodily injury* an *insured*

is legally entitled to collect from the owner or driver of an *uninsured motor vehicle*. The *bodily injury* must be caused by accident arising out of the operation, maintenance or use of an *uninsured motor vehicle*." (Emphasis sic.) *Id.* at 553.

{¶ 36} After recapping *Kish* and other cases involving intentional criminal conduct, the court found that "the conduct that inflicted harm on Stenger was the act of the other individual, Lawson, exiting his vehicle and tripping Stenger, *i.e.,* the instrumentality that caused injury to Stenger was Lawson rather than an uninsured vehicle." *Stenger* at 555. "Further, 'an intentional criminal assault, with an instrumentality other than a motor vehicle, is considered an intervening cause of injury unrelated to the use of the vehicle.' " *Id.* quoting *Scott v. Nationwide Mut. Ins. Co.*, 6th Dist. No. L-99-1191 (Dec. 23, 1999).

{¶ 37} In *Magan v. State Farm Fire & Cas. Ins. Co.,* 10th Dist. No. 02AP-1397, 2003-Ohio-4411, this court noted that, "the determination of each particular case is extremely fact driven, and each case has some slight factual variation that places it either within or outside the purview of the 'ownership,' 'operation,' 'maintenance,' or 'use' of an uninsured vehicle. Thus, we must determine which cases have the most factually similar circumstances to the present case." *Id.* at ¶ 10.

{¶ 38} The intervening cause of injury does not have to be criminal conduct; it can be negligence. In *Estate of Nord v. Motorist Mut. Ins. Co.*, 105 Ohio St.3d 366, 2005-Ohio-2165, a Cleveland EMS ambulance was transporting a patient to the hospital. During the trip a paramedic accidentally dropped a syringe, striking the patient in the eye and injuring him. Despite the fact the patient was riding in an uninsured motor vehicle, the Supreme Court of Ohio ruled the carelessness of the paramedic was the cause of the injury, and thus there was no causal link between the ownership, maintenance, or use of the ambulance and the dropping of the syringe. *Id.* at ¶ 14. The fact that the injury occurred inside the vehicle was not dispositive because to rule in such a manner would supplant the causation requirement. *Id.*

{¶ 39} In this case, Boyd Akers was returning to the vehicle after parking and exiting the vehicle because he was angry at something a passenger in the vehicle had done. But after Boyd Akers parked the vehicle along the side of the freeway, he embarked on a bizarre course of conduct that put him and others at risk. Here, as in *Stenger*, the chain of events may have started when Boyd Akers was inside the vehicle and his

daughter did something that upset him. But the subsequent, intervening conduct of Boyd Akers in crossing eight lanes of interstate highway, having a telephone conversation and re-crossing the highway broke the chain of causation such that Curry's injuries were the result of Boyd Akers' unlawfully or negligently entering the freeway and interfering with traffic rather than from the operation, maintenance or use of an uninsured motor vehicle. Curry's bodily injury arose from the intervening conduct of Boyd Akers rather than from the use of an uninsured motor vehicle.

{¶ 40} We find *Rainsberg* distinguishable in that the conduct of the pedestrians on the Ohio Turnpike in that case was related to trying to divert traffic away from a stalled vehicle. There were no intervening acts unrelated to the use of the vehicle, and the conduct was related to the operation (or lack of operation) and use of the vehicle.

**V. AMANDA AKERS' IMPUTED NEGLIGENCE**

{¶ 41} In addition to Boyd Akers' negligence in parking his vehicle on the side of a major highway and interfering with traffic on both sides of I-270, Curry also argues that Boyd Akers' negligence should be imputed to Amanda Akers under the doctrine of imputed negligence. Curry contends that under this doctrine, Amanda Akers was operating, maintaining, or using the 1990 Buick Century and therefore should be liable for Boyd Akers' negligence.

{¶ 42} Under the doctrine of imputed negligence, "[w]here the owner of a motor vehicle being driven by another is an occupant thereof, a rebuttable presumption or inference arises that the owner has control over it and that the driver is acting as his agent in operating the vehicle." *Ross v. Burgan*, 163 Ohio St. 211 (1955), paragraph one of the syllabus. Moreover, "[i]n the absence of evidence to rebut such presumption, any negligence of the driver in operating the motor vehicle is imputable to the owner riding therein." *Id.* at paragraph two of the syllabus.

{¶ 43} Here, Boyd Akers was not operating or using the motor vehicle when he caused the accident that resulted in Curry's bodily injury. As discussed above, Boyd Akers' behavior in exiting the vehicle and crossing a busy freeway on foot was an intervening cause of injury unrelated to the use of the vehicle. Thus, the doctrine of imputed negligence is inapplicable to this case.

{¶ 44} Curry also contends that Amanda Akers negligently entrusted the 1990 Buick to Boyd Akers because she knew or should have known that he was driving with a suspended license. Curry argues that Amanda Akers was the owner and a passenger of the 1990 Buick Century that was not insured for bodily injury liability at the time of the accident. She entrusted the keys and use of the vehicle to Boyd Akers, whose license was under suspension, to operate the vehicle on the day of the accident.

{¶ 45} A claim for negligent entrustment arises when "an owner entrusts his motor vehicle, with permission to operate the same, to a person so lacking in competency and skill as to convert the vehicle into a dangerous instrumentality." *Williamson v. Eclipse Motor Lines, Inc.,* 145 Ohio St. 467 (1945). "[L]iability in such cases arises from the combined negligence of the owner and the driver; of the former in entrusting the machine to an incompetent driver, and of the driver in its operation." *Id.* at 471. Not only must the owner entrust the vehicle to the driver with permission to drive, but the driver must be one "whose incompetency, inexperience or recklessness is known or should have been known by the owner." *Dowe v. Dawkins,* 10th Dist. No. 93AP-860 (1993), quoting *Williamson* at paragraph two of the syllabus.

{¶ 46} Here, there is no evidence in the record that Amanda Akers had any knowledge that Boyd Akers was driving with a suspended license. Curry submitted an Ohio Bureau of Motor Vehicles Abstract showing Boyd Akers' license was suspended, but there was no evidence that Amanda Akers had knowledge or any reason to know that her father was driving under a license suspension.

{¶ 47} Additionally, while Amanda Akers may have given her father permission to drive the vehicle, his operation of the vehicle did not convert it into a dangerous instrumentality. It was Boyd Akers' decision to exit the vehicle and cross a busy freeway in front of oncoming traffic that was the intervening cause of injury unrelated to the use of the vehicle.

## VI. CONCLUSION

{¶ 48} Based on the foregoing, we conclude that reasonable minds could only reach one conclusion and that conclusion is adverse to Curry. Thus, the trial court did not err in denying Curry's motion for summary judgment and granting summary judgment in favor

of State Farm. The two assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

BROWN and SADLER, JJ., concur

————————————————